In the Matter of SILVER MILL FROZEN FOODS, INC., Debtor.

Maurice A. EDELMAN, Trustee in Bankruptcy, Substituted for by Mrs. Helen Edelman, Plaintiff,

v.

MICHIGAN BLUEBERRY GROWERS ASSOCIATION, Joseph Send, Hall, McManus and Gleason, William Gleason, d/b/a Gleason Farms, Hi–Lo Farms, Roger Molter, Merle Phillips, Arnold Stout, Nye Brothers, John Herrenans, Phillip Prillwitz, Jerome Alvesteffer, Joe Ooman, George Wuszke, Wesley Prillwitz, Wilbur DeRuiter, Fred Piedt, David Kugel, Morrison's, Inc., Fowler Farms, Scott Munro, J.R. Wood, Inc., and McMullin Orchards, Defendants.

Bankruptcy No. HG 80–00025.
Adv. Nos. 81–1978, 81–1976, 81–1980, 81–1977, 81–1768, 81–1772, 81–1774, 81–1776, 81–1778, 81–1779 to 81–1781, 81–1784 to 81–1786, 81–1789, 81–1794, 81–1796, 81–1809, 81–1824, 81–1782, 81–1808, 81–1827.

United States Bankruptcy Court, W.D. Michigan.

Sept. 1, 1987.

Jeffrey R. Hughes, Michael S. McElwee, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for trustee.

James B. Frakie, John Piggins, Day, Sawdey, Flaggert & Porter, Grand Rapids, Mich., for debtor.

Philip T. Carter, Glen A. Schmiege, Foster, Swift, Collins and Coey, P.C., Lansing, Mich., for defendants.

James E. Christenson, Law, Weathers & Richardson, Grand Rapids, Mich., for McMullin Orchards.

## OPINION

### JURY TRIALS AND PREFERENCE ACTIONS

LAURENCE E. HOWARD, Bankruptcy Judge.

Each of the above adversary proceedings is an action brought by the trustee to recover an alleged preferential transfer pursuant to 11 U.S.C. § 547(b). In each, the defendants have filed demands for a jury trial. The trustee has moved to strike these demands. The trustee argues that all of the defendants have either consented to the Bankruptcy Court's summary disposition of these matters, or should be deemed to have done so. Furthermore, the trustee denies that the defendants have any right under statute or the Seventh Amendment to the Constitution of the United States [1] to try any of these matters to a jury.[2]

---

1. The Seventh Amendment to the Constitution of the United States provides that: "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

2. The trustee has based this argument on certain statements contained in bench opinions rendered by the court in *St. Joseph Bank and Trust Co., d/b/a Capitol Credit Company v. De-Bruyn Produce Co., et al. (In re Prange Foods Corporation)*, Adv.Pro. 85-132, District Court Case No. K 85-137 CA8 (Bankr.W.D.Mich. Nov. 8, 1985), and *Scrima v. Insurance Company of*

■ The jury demands may be broken down into two groups: those made by defendants who have also filed claims in the estate, and those made by defendants who have not submitted claims. As to those defendant-creditors who have filed claims, *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), would appear to be the guiding precedent.[3] True, *Katchen* was decided under the Bankruptcy Act. The intervening years have seen the adoption of the Bankruptcy Code. But the provision of the Code applicable to this case and relevant to jury trials, the former 28 U.S.C. § 1480(a),[4] provided that:

> Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

Section 1480(a) neither impairs nor creates any right to a jury trial, but merely preserves that right as it stood under any statute in effect on September 30, 1979. September 30, 1979 was the last day the Bankruptcy Act was in effect; on October 1, 1979, the Bankruptcy Code superseded it as to all cases filed after that date. Bankruptcy Reform Act of 1978, Pub.L. No. 98–598, § 402(a). Therefore, in order to determine the status quo as of September 30, 1979, we must look to the relevant Bankruptcy Act case law. *Katchen* is the leading case on the question of the Seventh Amendment rights of preference action defendants who have filed claims in the estate. Furthermore, *Katchen* remains viable because its analysis rested upon Section 57, sub. g. of the Act, which provided that:

> The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

The present Bankruptcy Code has a similar provision, § 502(d), which states that the court shall disallow any claim filed by an entity which has not returned any preference it has received.[5] The legislative history to § 502(d) states that it is derived from the then present law, which would have been Section 57, sub. g of the Bankruptcy Act. S.Rep. No. 989, 95th Cong., 2nd Sess. 65, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5851. Therefore the *Katchen* analysis remains relevant and viable.

*Katchen* reasoned that the allowance and disallowance of claims is "of 'basic importance in the administration of a bankruptcy estate,'" 382 U.S. at 329, 86 S.Ct. at 472, (quoting *Gardner v. State of New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504 (1947)), and therefore it is within the summary jurisdiction of the bankruptcy court. As no intervening stat-

---

*North America, et al. (In re Scrima*, Adv. Pro. 86–198, (Bankr.W.D.Mich. Oct. 10, 1986). Certain dicta in those opinions broadly stated that there is no right to a jury trial in core matters. However, the issues in those cases, claims against property of the estate in *Prange* and contractual actions accruing to the estate post-petition in *Scrima*, correspond to the former summary jurisdiction of bankruptcy courts under the Bankruptcy Act of 1898.

**3.** Granted, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), might be read as limiting *Katchen.* 458 U.S. at 79, n. 31, 102 S.Ct. at 2875–76, n. 31. But such a challenge is not before this Court.

**4.** This case is controlled by the former § 1480(a) because it was pending on July 10, 1984. On that date, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353 was enacted, which repealed § 1480(a) and replaced it with 28 U.S.C. § 1411, which controls all cases filed subsequent to July 10, 1984.

**5.** Section 502(d) provides that:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under Section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount or turned over any such property, for which such entity or transferee is liable under Section 522(j), 542, 543, 550 or 553 of this title. Preferences are avoidable under § 547.

ute or case has changed this, it must remain true of the allowance and disallowance of claims today. The Bankruptcy Act provided at § 57, sub. g that no claim could be allowed if the claimant had not returned any preference it had previously received. Therefore, *Katchen* reasoned, in the exercise of its summary jurisdiction to determine the allowance of claims, the bankruptcy court must determine the existence and amount of any preferences. 382 U.S. at 334, 86 S.Ct. at 475. Since such a determination arises as part and parcel of the summary allowance procedure it must also be a summary proceeding. 382 U.S. at 330, 86 S.Ct. at 473. Again, as no intervening statute or case law has effected any substantive change in this rule, it must be as true today of proceedings under § 502(d) as it was before of proceedings under § 57, sub. g. The determination of a preference under § 57, sub. g was entitled to *res judicata* effect. 382 U.S. at 334, 86 S.Ct. at 475. As a summary determination of a preference was entitled to *res judicata*, *Katchen* reasoned that the short further step of affording the trustee affirmative relief in the form of an affirmative order to turn over the preference was justified, for any subsequent plenary hearing would be a meaningless gesture, all the determinative questions having already been resolved in the summary proceeding. 382 U.S. at 333–35, 86 S.Ct. at 474–76. Such a summary grant of affirmative relief does not violate the creditors' Seventh Amendment right to a jury trial since "the issue arises as part of the process of allowance and disallowance of claims, it is triable in equity." 382 U.S. at 336, 86 S.Ct. at 476. This analysis is still as valid today under § 502(d) as it was under § 57, sub. g.

The only distinction that might be made between *Katchen* and the instant adversary proceeding is that in *Katchen* the trustee had interposed the allegation of a preference as an objection to a claim. He was proceeding under § 57, sub. g, the predecessor of § 502(d). Here, the trustee has instituted the adversary proceeding to recover the preference directly under § 547. But this distinction is a useless formality. Were the court to insist upon it, the trustee could simply file objections to the defendants' claims and achieve the same results. If the court could summarily determine the existence and amount of a preference if the papers before it were captioned "Objection to Claim," the court cannot see why the range of its powers should be reduced and the scope of the Seventh Amendment expanded merely by the fact that the pleadings are captioned "Complaint to Recover Preference." To hold otherwise would be to hold that the court's jurisdiction and the ambit of the Seventh Amendment are determined by the caption of the pleadings, not by the form of the proceedings. In essence, the two actions are identical, as is the relief sought. If the summary disposition of a § 502(d) objection to a claim does not violate the Seventh Amendment, neither can the summary disposition of a § 547 [6] action to recover a preference from a creditor who has filed a claim against the estate.[7]

---

**6.** The court is aware of the fact that a proceeding under § 60 of the Bankruptcy Act to recover a preference might have been before a jury. But the terms of the Section itself only stated that "[f]or the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction." The statute did not define when plenary proceedings are necessary. Although *Katchen* specifically left this question open, 382 U.S. at 332, n. 9, 86 S.Ct. at 474, n. 9, the logical conclusion of the *Katchen* analysis is that they are not when the defendant has filed a claim in the estate.

**7.** Although the defendants vehemently deny that they have ever consented to the summary jurisdiction of the bankruptcy court, their consent or lack of it is irrelevant. The *Katchen* decision was "governed by the 'traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.'" 382 U.S. at 332, n. 9, 86 S.Ct. at 474, n. 9 (quoting *Wiswall v. Campbell*, 93 U.S. (3 Otto) 347, 351, 23 L.Ed. 923 (1876)). *Katchen* also cited *Alexander v. Hillman*, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192 (1935), a receivership case, for the proposition, equally applicable in bankruptcy, that "[b]y presenting their claims respondents subjected themselves to all the consequences that attach to an appearance." 382 U.S. at 335, 86 S.Ct. at 476

■ However, as noted above, only a few of the defendants have filed formal claims.[8] But all the defendants have asked in their answers that if they are compelled to return any preference, that they might be given a credit of 25% for payments they could have received under the Chapter 11 Plan.[9] This court has already granted that request in a prior opinion issued in these adversary proceedings. *Edelman v. Gleason (In the Matter of Silver Mill Frozen Foods, Inc.)*, 23 B.R. 179, 183–84 (Bankr. W.D.Mich.1982). The trustee argues that the making of this request should be construed as the filing of an informal proof of claim subjecting even the defendants who have not filed formal proofs of claim to the bankruptcy court's summary jurisdiction.

*Katchen* cannot be extended so far. The linchpin of the *Katchen* opinion was that in filing a proof of claim, the creditors had submitted themselves to the equity court's resolution of their claim and all the issues arising in that determination. *Katchen* itself stated, however, that a preference defendant "might be entitled to a jury trial if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee," and cited to *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). That is what the defendants who have not filed claims have done. Defendants who awaited the trustee's institution of a preference action and who then asked for a mitigation of any eventual award given against them cannot be characterized as essentially the same as defendants who affirmatively filed claims, especially when the Supreme Court has indicated the distinction has constitutional significance. Unless *Schoenthal* is no longer good law, the defendants who did not file claims would appear entitled to a jury trial.

(quoting *Alexander*, 296 U.S. at 241, 56 S.Ct. at 210).

8. The defendants in the following adversaries have filed formal claims: 81–1978, 81–1976, 81–1977, 81–1774, 81–1781, 81–1785, 81–1786, 81–1796, and 81–1782.

9. This request arises because the debtor initially filed under Chapter 11. The debtor proposed a Plan of Reorganization which promised a 52%

In *Schoenthal*, the Supreme Court held that under § 267 of the Judicial Code, 28 U.S.C., § 384, as it read in 1932, a preference action must be brought at law when the defendants have not waived their right to a jury. The trustee argues that *Schoenthal* is no longer viable for various reasons.

The trustee points out that *Schoenthal* was decided under the jurisdictional scheme which existed prior to the merger of law and equity accomplished by the promulgation of the Federal Rules of Civil Procedure in 1938. It is true that Section 267 of the Judicial Code, the provision which governed in *Schoenthal*, no longer exists. It was repealed in 1948 as obsolete because of the passage of Rules 1 and 2 of the Federal Rules of Civil Procedure. 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, *Moore's Federal Practice*, ¶ 2.02[2] (2nd ed. 1986). However, § 267 merely provided that:

> "Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

As *Schoenthal* noted, however, that is the rule which

> has always been followed in courts of equity. The enactment gives it emphasis and indicates legislative purpose that shall not be relaxed. It serves to guard the right of trial by jury preserved by the Seventh Amendment and to that end it should be liberally construed.

287 U.S. at 94, 53 S.Ct. at 51. The obsolescence of § 267 is therefore irrelevant, for in substance it was nothing more than a restatement of an equitable rule which served to guard the rights preserved by the Seventh Amendment, which still stands.

Alternatively, the trustee reads the *Katchen* quote above (to the effect that a

dividend to unsecured creditors. The Plan was confirmed and a first stage 25% dividend paid to some unsecured creditors. Unfortunately, before the debtor could pay the second dividend of 27% it defaulted and converted to Chapter 7. These defendants did not receive any dividend during the Chapter 11, although they would have been entitled to one if they had paid back the preference.

preference defendant "might" have a right to a jury trial) as limiting, if not undercutting, *Schoenthal.* In the opinion of one Court that passage "represents an equivocation of the court's decision in *Schoenthal.*" *DuVoisin v. Anderson, et al. (In re Southern Industrial Banking Corporation),* 66 B.R. 370, 15 B.C.D. 249, 252 (Bankr.E.D.TN.1986). Yet it would be well to remember that *Schoenthal* does not stand for the proposition that all preference actions must be tried to a jury; rather, *Schoenthal* held that "[t]he question whether remedies must be by action at law or may be pursued in equity notwithstanding objection by defendant depends upon the facts stated in the bill." 287 U.S. at 95, 53 S.Ct. at 51. Seen in this light, the *Katchen* "might" is more naturally read as an allusion to the contingent nature of the *Schoenthal* ruling, not as a criticism.

The trustee also argues that a preference is not a legal action, as *Schoenthal* held it was, but rather it is an equitable remedy. Other courts have so held. In *Reda, Inc. v. Harris Trust & Savings Bank, et al. (In the Matter of Reda, Inc.),* 60 B.R. 178 (Bankr.N.D.IL.1986), the court held that a preference was an equitable action even though all that was sought was the recovery of money. 60 B.R. at 180–181. The *Reda* court distinguished *Schoenthal* on the ground that the plenary/summary jurisdiction distinction under which *Schoenthal* was decided is no longer applicable under the Bankruptcy Code. 60 B.R. at 181, n. 8. *Southern Industrial Banking* also held that a preference is an equitable action. It distinguished *Schoenthal* on the ground that although preferences may not have constituted any part of the proceedings in bankruptcy when *Schoenthal* was decided, they do now because they are core proceedings under 28 U.S.C. § 157(b)(2)(F). 66 B.R. 370, 15 B.C.D. at 252.

However, this court must disagree. The Supreme Court has construed the Seventh Amendment:

> to require a jury trial on the merits in those actions that are analogous to "Suits at common law." Prior to the Amendment's adoption, a jury trial was customary in suits brought in the Eng-

lish *law* courts. In contrast, those actions that are analogous to 18th–century cases tried in courts of equity or admiralty do not require a jury trial. This analysis applies not only to common law forms of action, but also to causes of action created by congressional enactment.

> To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Tull v. United States,* —— U.S. ——, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (emphasis as in original) (citations omitted). *Schoenthal* has already addressed these questions. In *Schoenthal,* the Supreme Court based its decision on the observation that "[i]n England, long prior to the enactment of our first Judiciary Act, common-law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts." 287 U.S. at 94, 53 S.Ct. at 51. *Schoenthal* also addressed the nature of the remedy sought by a preference action:

> The facts here alleged give no support to plaintiff's assertion that it has no adequate remedy at law. The preferences sued for were money payments of ascertained and definite amounts. The bill discloses no acts that call for an accounting or other equitable relief. It is clear that there may be had at law a remedy "as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity."

287 U.S. at 95, 53 S.Ct. at 51. These statements are equally applicable to the relief sought by the trustee in the instant proceedings.

■ *Reda* and *Southern Industrial Banking* do not offer any viable way

around *Schoenthal.* The plenary/summary distinction prevalent at the time *Schoenthal* was decided may not be applicable any more, but the Seventh Amendment still stands. Nor can it be evaded by reclassifying an action from plenary under the Act to core under the Code.[10] The mere classification of a matter as a core proceeding cannot abolish a litigant's right to a jury trial under the Seventh Amendment. *Zimmerman v. Cavanagh (In the Matter of Kenval Marketing Corp.),* 65 B.R. 548, 15 B.C. D. 725, 728 (E.D.Pa.1986). If this were possible, Congress could nullify the Seventh Amendment simply by reclassifying every action out from under the Amendment's protection.[11]

It must be admitted that *Schoenthal* did not expressly hold that a jury was required by the Seventh Amendment, but rather by § 267 of the Judicial Code. But it is clear that for our purposes the two are synonymous, and *Schoenthal* addressed the elements of the Seventh Amendment test that is still applied today. Of course, the Supreme Court's interpretation of history may be incorrect, and its characterization of the relief sought inaccurate. Nonetheless, they are binding until reversed by that Court. Other courts have concluded that history compels this result. *Zimmerman,* 65 B.R. 548, 15 B.C.D. at 721–29; *Boss–Linco Lines, Inc. v. Laidlaw Transportation Ltd. (In re Boss–Linco Lines, Inc.),* 55 B.R. 299 (Bankr.W.D.N.Y.1985); and *Young v. Saker (In the Matter of Saker),* 37 B.R. 802 (Bankr.S.D.N.Y.1984).

The trustee's last argument is that following *Schoenthal* will lead to anomalous results. This very opinion is confirmation of the trustee's argument. As to the defendants who have filed claims in the estate, the court concludes that they are not entitled to a jury trial, but the balance of the defendants are. That is an anomalous result. A court, however, cannot ignore clear precedents merely because those precedents do not comport with the court's common sense.

Instead, the court must obey precedent. Here we have a consolidated adversary proceeding with two sets of defendants. One set is entitled to a jury trial on the merits; members of the other set are not. The only solution is to break the consolidated proceeding in two. Therefore, a jury trial shall be held for those defendants who have not filed claims, and a bench trial for those who have.[12] However, as a matter of judicial economy, these two trials shall be held concurrently.

■ For the above reasons, the trustee's motion to strike the jury demands is denied as to the defendants who have not filed claims in the estate, and granted as to those who have filed claims.[13]

---

**10.** To the extent that the court has indicated in dicta in bench opinions in the *Prange* case and in the *Scrima* case that there is no right to a jury trial in any core proceeding, those decisions are accordingly limited, although reaffirmed.

**11.** Alternatively, as noted above, § 1480(a), which governs this case, preserved the right to a jury as it stood under any statute in effect on September 30, 1979, which includes the Bankruptcy Act. On that date, this action would have been a plenary matter in which the defendants who had not filed claims would be entitled to a jury trial under *Schoenthal.*

**12.** The court notes that during the pendency of this motion one adversary proceeding, No. 81–

1827, concerning McMullin Orchards, has settled.

**13.** The trustee has also argued that five of the jury demands were not timely filed under Bankruptcy Rule 9015 and should therefore be stricken. That rule, however, has now been abrogated. There is no local bankruptcy rule governing jury demands. Therefore, the objection might be moot. Furthermore, even if the court were to hold the jury demands were untimely under Rule 9015 when filed, in the absence of any present rule governing filing the parties could simply refile their demands now. Therefore, denial on grounds of untimeliness would be a futility.