In re Wilton B. JACKSON, Janet G. Jackson, t/a Greenbank Farm, A Partnership, Debtors.

In re Wilton B. JACKSON, and Janet G. Jackson, Individually, and as partners in Greenbank Farm, Debtors.

In re Walter B. JACKSON, and Carol E. Jackson, husband and wife, individually, and Walter B. Jackson, as a partner in Greenbank Farm, Debtors.

In re James R. LEONARD, Jr., Trustee, Plaintiff,

v.

Henry WESSEL, and Alan S. Carpel, individually and t/d/b/a Wessel and Carpel, A Partnership, Defendants.

Bankruptcy Nos. 81–00396T, 81–04010T and 81–04615T.

Adv. No. 82–2179T.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 6, 1988.

James R. Leonard, Jr., Lancaster, Pa., Trustee.

Reeder Fox, Frank D. Chaiken, Michael M. Mustokoff, Athena Skaleris, Philadelphia, Pa., for defendants.

William J. Gallagher, Frederick P. Kramer, II, West Chester, Pa., for plaintiff.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION

The instant adversary proceeding, having been stayed pending resolution of the questions relating to bankruptcy-court powers raised by the decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), for almost six years, continues to present provocative questions concerning the powers of bankruptcy courts. Presented at this time are difficult issues as to whether this proceeding is core or non-core in nature; whether the Plaintiff has waived and is therefore entitled to a jury trial; and whether a jury trial can be conducted in this bankruptcy court. We hold that the proceeding is core, and that the Plaintiff has not waived his right to a jury trial. These decisions require us to confront the question of whether we, as a bankruptcy court, may conduct a jury trial. Although we have some reservations as to whether this decision would be sustained by higher courts, we follow the rulings of our district court which answer this question affirmatively.

## B. PROCEDURAL HISTORY

The initial underlying case associated with this matter was filed as a Chapter 11 case on February 4, 1981. The case was assigned to the Reading division of this court and, consequently, to present Chief Judge Thomas M. Twardowski, who sits in that station. The adversary Complaint is an action filed on September 8, 1982, by the successor-Trustee appointed upon the conversion of this case to Chapter 7. The Defendants are the attorneys who originally represented the Debtors from allegedly, January 21, 1981, until they were replaced on August 20, 1981. The Complaint, in less than totally lucid fashion, alleges that the Defendants acted wrongfully in at least six different senses: (1) Advising the Debtors to file bankruptcy at all, in light of the fact that they allegedly had sufficient assets to cure the defaults which had resulted in the sheriff's sale that had precipitated the bankruptcy filing; (2) Filing the case as a partnership bankruptcy, but listing the partners' individual assets and/or commingling them with partnership assets on the Debtor's schedules; (3) Advising the Debtors that they could recover certain post-petition expenditures as administrative expenses without filing the requisite motions to assure this, which resulted in their loss of an opportunity to recover the funds expended for those purposes; (4) Giving erroneous tax advice regarding the treatment of salary paid to Walter B. Jackson; (5) Intentionally failing to disclose fees paid to them by the Debtors or to disclose the repayment of a loan made by the Debtors to finance such fees; and (6) Negotiating a liquidating plan for the Debtors which they did not approve or desire. The Complaint recites three counts, alleging claims for breach of the contract between the Debtors and the Defendants to provide competent legal advice; negligence (malpractice); and gross negligence, breach of fiduciary duty, fraud, and abuse of process. The end result of the Defendants' advice is alleged to have been the loss of the Debtors' farm, which purportedly could and should have been saved.

After the Defendants were replaced as counsel, the Debtors' new attorney, allegedly in order to correct the deficiencies caused by the Defendants' representation, converted the initial Chapter 11 case to Chapter 7 and filed the other two above-captioned Chapter 7 cases. These cases, as well as this later adversary proceeding,

were all filed in the Reading station of this court, and were assigned to Chief Judge Twardowski.

On October 4, 1982, this matter was stayed pending Congressional resolution of the jurisdiction problems arising as a result of the *Marathon* decision. Despite the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (hereinafter referred to as "BAF-JA") on July 10, 1984, which was the Congressional response to *Marathon,* no substantive action subsequent to the stay of this action was taken for a considerable period thereafter. This inaction might be explained in part by the fact that the previous Trustee was replaced in 1986 and the new Trustee was appointed who in turn had new counsel appointed in this case on June 4, 1987. On August 24, 1987, new counsel filed a motion to vacate the stay of this proceeding. Before this motion was resolved, the Defendants, on February 5, 1988, filed a motion to recuse Chief Judge Twardowski on the ground that, at some undefined earlier proceeding in one of the cases, he had expressed an opinion that the Defendants *had* engaged in malpractice in handling the initial case. On February 8, 1988, Chief Judge Twardowski granted this motion and this proceeding, although not the underlying bankruptcy cases, was reassigned to us.

Our first step was to issue a Pre–Trial Order of March 17, 1988, implicitly granting the motion to vacate the stay and setting deadlines for the Defendants to file an Answer to the Complaint, for any party to file a motion to withdraw the reference to the District court, request a jury trial, or have the matter determined to be non-core; and for establishing discovery deadlines, procedures for exchange of exhibits, and the trial date.

On April 4, 1988, we approved a Pre-trial Stipulation of counsel in the same form as, but setting back the dates established in, our original Pre-trial Order, with the caveat that these dates were firm. Therein, *inter alia,* we allowed the Defendants until July 1, 1988, to file an Answer to the Complaint; gave the parties until August 1, 1988, to file the motions regarding withdrawal of the reference, a jury demand, or a request for a determination of non-core status; and set October 12, 1988, as the trial date.

The Defendants' Answer was entered of record on July 6, 1988. On July 25, 1988, the Plaintiff filed a demand for a jury trial. On August 1, 1988, the Defendants filed a motion requesting that the matter be determined to be non-core. These filings prompted an Order of August 4, 1988, in which we requested the parties to file Briefs, on or before August 22, 1988,

> addressing the following issues, taking into account the decisions in *In re Globe Parcel Service, Inc.,* 75 B.R. 381 and 71 B.R. 323 (E.D.Pa.1987); *In re Kenval Marketing corp.,* 65 B.R. 648 [548] (E.D. Pa.1986); and *In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr. E.D.Pa.1986):
>
> a. Is this a core or non-core proceeding?
>
> b. If it is non-core, do you consent to have this court determine this matter pursuant to 28 U.S.C. § 157(c)(2)?
>
> c. Does the Plaintiff have a right to a jury trial on this matter if it is (1) core or (2) non-core?
>
> d. Assuming that the Answer to c(1) or c(2) *supra* is affirmative, may this bankruptcy court conduct a jury trial?
>
> e. If the answer to (d) *supra* is negative, then how should this matter be decided?

Having received these Briefs,[1] we now address our decisions on the issues which we asked the parties to address.

C. THIS MATTER IS A CORE PROCEEDING BECAUSE IT CONCERNS PRINCIPALLY POST–FILING CONDUCT OF THE DEFENDANTS RELATING DIRECTLY TO ADMINISTRATION OF THE DEBTORS' ESTATE

■ As we pointed out in *In re A.I.A. Industries, Inc.,* 75 B.R. 1013, 1016–17

---

1. The Defendants also saw fit to draft letters of August 24, 1988, and August 31, 1988, to us responding to the Plaintiff's Brief and supporting their previous Briefs. We remind them that such supplemental submissions are disfavored. *See In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr. E.D.Pa.1987), *aff'd,* 87 B.R. 333 (E.D.Pa.1988).

(Bankr.E.D.Pa.1987); and *Windsor, supra,* 67 B.R. at 694–96, 700, there is significant room for difference in ascertaining whether any given matter, such as a garden-variety accounts receivable proceeding as was considered in *Windsor,* is properly classified as core or non-core in nature. This is because, in BAFJA, Congress chose to define core proceedings by a non-exclusive list of certain types of proceedings set forth in 28 U.S.C. § 157(b)(2). It is an understatement to note that many types of proceedings which commonly arise in bankruptcy cases are not listed there and are difficult to categorize as conspicuous by their absence or included by implication. Moreover, the confusion is heightened by the presence of 28 U.S.C. §§ 157(b)(2)(A) and (O), reciting the following two categories of cases which, if interpreted broadly, could be held to embrace almost every type of proceedings which would ever arise in a bankruptcy case:

> (2) Core proceedings include, but are not limited—
> (A) matters concerning the administration of the estate;
>
> . . . . .
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Because the Defendants have specifically declined to consent that we determine this matter if it is noncore, per 28 U.S.C. § 157(c)(2), it is crucial that we ascertain whether it is core or non-core to conclude whether we can determine it. Several recent decisions by Courts of Appeals, all handed down after our decision in *Windsor,* are somewhat helpful in resolving this issue. First, in *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168–71 (1st Cir.1987), the court held that an accounts receivable action "arising from the sale of the estate's assets, unlike a suit to recover a pre-petition debt, falls within the literal wording of 28 U.S.C. § 157(b)(2)(A)," *id.* at 168, and therefore *is* a core proceeding. The court appears to approve the holding in *Mohawk*

*Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464, 466 (D.Mass.1985), contrary to our decision in *Windsor,* that a pre-petition accounts receivable action is non-core, but holds that collection of a post-petition accounts receivable action is clearly distinguishable therefrom and hence is core in nature. 815 F.2d at 168.

Second, in *In re Mankin,* 823 F.2d 1296, 1299–1301 (9th Cir.1987), the court held that a fraudulent conveyance action is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(H). In so doing, the court, distinguishing its earlier holding in *In re Castlerock Properties, Inc.,* 781 F.2d 159 (9th Cir.1986), that a state-law counterclaim raised by a debtor is not a core proceeding, emphasizes Congressional history that § 157(b)(2) was meant to create a broad category of core proceedings which would push this notion, and the power of bankruptcy courts to determine proceedings, to their farthest constitutional bounds allowed by *Marathon.* 823 F.2d at 1301.

However, the third decision, in *In re Wood,* 825 F.2d 90, 94–98 (5th Cir.1987), presses in the opposite direction. Emphasizing the need to conform an interpretation of 28 U.S.C. § 157(b)(2) to *Marathon,* the court holds that "controversies that do not depend on the bankruptcy laws for their existence—suits that could proceed in another court even in the absence of bankruptcy—are not core proceedings." 825 F.2d at 96.

Finally, and most significantly to this court, our own local Court of Appeals has addressed this issue in *In re Meyertech Corp.,* 831 F.2d 410, 415–18 (3d Cir.1987). In *Meyertech,* the Court was faced with an action brought against a debtor, rather than, as in *Arnold, Mankin, Wood,* and here, an action maintained by or on behalf of the debtor. The court cites to *In re Allegheny, Inc.,* 68 B.R. 183, 187–90 (Bankr.W.D.Pa.1986); and *In re Franklin Computer Corp.,* 50 B.R. 620, 622–26 (Bankr.E.D.Pa.1986), cases which are consistent with our holding in *Windsor* that pre-petition accounts receivable actions are core proceedings, with apparent approval. 831 F.2d at 416, 417. However, the court

appears to approve the reasoning of *Castlerock, supra,* that an expansive interpretation of 28 U.S.C. §§ 157(b)(2)(A) and (O) would swallow up almost all actions within the constellation of core proceedings, and *Mohawk Industries,* which is contrary to *Windsor, Allegheny,* and *Franklin Computer,* is also cited with apparent approval. *Id.* at 417. The court concludes that the action before it, although based solely upon state law, is the paradigm of a "claim." Therefore, the court holds that the proceeding in issue is core under § 157(b)(2)(B), but not under §§ 157(b)(2)(A) or (O). *Id.* at 418.

Neither *Arnold Print Works,* nor *Mankin,* nor *Wood* are cited in *Meyertech.* However, the *Meyertech* decision appears to reject the restrictive definition of "core" suggested in *Wood.* The proceeding in issue in *Meyertech* clearly could have existed irrespective of the presence of the federal Bankruptcy Code. We therefore believe that the result in *Meyertech* is consistent with the result in *Arnold Print Works* and its reasoning is consistent with that of *Mankin.* It may even be read as containing an ambiguous nod in support of our reasoning in *Windsor.*

Having explored the theoretical explorations of the highest courts of our land which have recently pondered the core/non-core dichotomy, we now note the cases which the parties properly contend are the most factually analogous to the case at hand, because these cases involve lawsuits, like the instant proceeding, in which the debtors' counsel are defendants.

Among these, we find the most helpful to be *In re Landbank Equity Corp.,* 77 B.R. 44 (E.D.Va.1987), a proceeding in which, like here, a trustee brought an action against the debtor's counsel charging, basically, malpractice; and *In re Stockert Flying Service, Inc.,* 74 B.R. 704 (N.D.Ind. 1987), in which creditors of the debtor sued the debtor's counsel for allegedly mishandling the debtor's assets to their detriment. In *Landbank,* the court held that the proceeding before it was non-core, but cited the *Arnold Print Works* case with approval and distinguished it because "the Trustee's Amended Complaint is based entirely on transactions which occurred *before* Landbank filed its bankruptcy petition" (emphasis added). 77 B.R. at 48. In *Stockert,* the district court refused to withdraw reference of the proceeding to it because it found the proceeding to be core in nature, holding that the action concerned the handling of assets of the estate. 74 B.R. at 708. However, the court appears influenced by the dubious nature of the plaintiffs' action and the fact that a waste of judicial resources would ensue if the district court became embroiled in the controversy. *Id.*

The instant proceeding, although somewhat vague in setting forth the Defendants' alleged wrongdoings and the relationship of same to the progress of the Chapter 7 cases,[2] clearly appears to relate principally to actions taken by the Defendants after the filing of the initial bankruptcy case. Of the various actions of the Defendants

---

**2.** The fact that we have been assigned only this adversary proceeding, and the underlying Chapter 7 cases remain assigned to Chief Judge Twardowski, is a necessary evil of the recusal process. Causes of action of a Chapter 7 debtor which arise post-petition conceivably have little or no relationship to the debtor's estate and therefore may not even be related to a Chapter 7 bankruptcy case. We note, however, that the actionable conduct in issue here all occurred while the case was in Chapter 11, and this may bring these matters into the scope of the Debtors' estates after conversion. *Cf. In re Waugh,* 82 B.R. 394, 398–400 (Bankr.W.D.Pa.1988) (debtor's payments into Chapter 13 plan become property of the estate upon conversion in Chapter 7). *But cf. In re Gillen,* 69 B.R. 255 (E.D.Pa. 1987) (contra to *Waugh* on same issue).

We do not address this issue at more length here for two reasons: (1) No party has raised it; they seem to assume that this proceeding is at least related to the Chapter 7 cases; and (2) We have virtually no information about the Chapter 7 cases, as they have not been assigned to us. The parties should also remember, in trying this proceeding, that those underlying cases were not assigned to us. No assumptions should be made that this court has access to or knowledge of the contents of the Debtors' main bankruptcy cases. These contents are not part of the record here in any event. *See also In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir.1942); and *In re Nicolet, Inc.,* 80 B.R. 733, 742–44 (Bankr.E.D.Pa. 1987).

attacked in the Complaint, as set forth at page 127 *supra*, only the first, i.e., the counselling the Debtors to file the bankruptcy, would appear to have occurred prepetition. Moreover, the prepetition period of representation was only from January 21, 1981, to February 4, 1981, a period of about two weeks. The post-petition representation extended for over six months thereafter.[3]

Therefore, we believe that the *Landbank* case is clearly distinguishable[4] and that the holding of the *Arnold Print Works* case is highly pertinent here. We believe that the Third Circuit would follow *Arnold Print Works*, in light of the tenor of its holding in *Meyertech*. *See also In re Tidwell Industries, Inc., Tidwell Industries, Inc. v. Delmarva Homes, Inc.*, 87 B.R. 345 (Bankr.N.D.Ala.), (Bankr.E.D.Pa.1988). (Judge Fox of this court follows *Arnold* despite his unwillingness to follow *Windsor* expressed in, *e.g.*, *In re Earle Industries, Inc.*, 71 B.R. 919, 9211–23 (Bankr.E.D.Pa.1987)). We therefore conclude that this matter is a core proceeding.

## D. GIVEN THE PRESUMPTION AGAINST WAIVER OF CONSTITUTIONAL RIGHTS, THE PLAINTIFF HAS NOT WAIVED HIS RIGHT TO A JURY TRIAL

The Defendants articulate three bases on which they contend that the Plaintiff waived his right to a jury trial in this proceeding: (1) He delayed an unconscionably long period—almost six years from the filing of his complaint to July 25, 1988 —in making a jury demand; (2) He delayed beyond the 10–day period, allegedly applicable from Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 38(b) by analogy, from the time of the Defendants' Answer, entered on July 6, 1988, to July 25, 1988, in making the jury demand; and (3) By not moving to withdraw the reference of this proceeding to the district court, which alone can conduct a jury trial, the Plaintiff has effectively also waived his right to a jury trial.

The Plaintiff's responses are that he relied on this court's Order of April 4, 1988, approving the parties' Pre-trial Stipulation, as extending the period in which a jury trial demand could be filed until August 1, 1988, which deadline he met; and that he desires this court, as opposed to the district court, to conduct the jury trial and believes it empowered to do so.

█ The first argument of the Defendants has little merit. It is true that the Plaintiff could have filed the request for a jury trial at any time on or after September 8, 1982. However, the proceeding was stayed less than a month after its inception and nothing transpired in it until 1987. At that point, a new Trustee was appointed and new counsel were appointed. However, the stay was never officially lifted by Chief Judge Twardowski prior to his recusal. It was not until we entered our initial Pre-trial Order on March 17, 1988, that the stay order was even implicitly removed. Therefore, the viable life of the case was less than five months before the jury demand was filed.

The third argument is addressed in the subsequent headnote in which we conclude, with some reservations, that we may conduct a jury trial.

---

**3.** We also note that a legal malpractice claim, under Pennsylvania law, may not accrue until the client discovers or should have discovered the defendant's wrongful action. *See, e.g., Bowman v. Abramson*, 545 F.Supp. 227, 229–31 (E.D.Pa.1982). *Cf. In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (claim in bankruptcy does not accrue at the time of the commission of the underlying act, but, rather, at the time that potential liability arises). The Debtors clearly did not discover any wrongful acts of the Defendants pre-petition, because they continued to retain the Defendants for a considerable period post-petition.

**4.** We do not consider it necessary to discuss the following decisions cited by the parties for the following reasons: *Medina–Figueroa v. Heylinger*, 63 B.R. 572 (D.P.R.1987) (medical malpractice case challenging pre-petition actions); and *In re GHR Energy Corp.*, 60 B.R. 52 (Bankr.S.D.Tex.1985) (issue was disqualification of counsel, clearly within the bankruptcy court's jurisdiction, not a claim of malpractice against counsel).

This leaves only the second argument which, due to the elimination of Bankruptcy Rule (hereinafter "B.Rule") 9015, in the adoption of the new national Bankruptcy Rules on August 1, 1987, has left a procedural gap which renders this issue extremely problematical.

Prior to August 1, 1987, B.Rule 9015(a), (b), and (c) mirrored the language of, respectively, F.R.Civ.P. 38(a), (b), (c), and (d). The most significant portions of F.R.Civ.P. 38, i.e., (a), (b), and (d), read as follows:

RULE 38. JURY TRIAL OF RIGHT

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

. . . . .

(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

▮ The 1987 Advisory Committee Note to the new national Bankruptcy Rules, adopted August 1, 1987, stated that B.Rule 9015 was deleted because it "has been cited as conferring a right to jury trial in other matters [other than personal injury or wrongful death actions, addressed in 28 U.S.C. § 1411, trial of which is specifically confined to the district court pursuant to 28 U.S.C. § 157(b)(5)] before bankruptcy judges." Since a procedural rule may not enlarge any substantive right, the rule was abrogated unless and until "the courts of appeals or the Supreme Court define a right to jury trial in any bankruptcy matters, . . ."

Unfortunately, a side-effect of abrogating B.Rule 9015 was to eliminate the existence of any procedural rule relating to demands for jury trials in bankruptcy cases until such time as the right to jury trial of any matter in bankruptcy court was resolved.

It would not be illogical to conclude that the procedures of F.R.Civ.P. 38 continue to govern the procedures for demands of jury trials in bankruptcy court. *But see In re Silver Mill Frozen Foods, Inc.,* 80 B.R. 848, 854 n. 13 (Bankr.W.D.Mich.1987) (abrogation of B.Rule 9015 eliminates any governing procedural rule; applying the time strictures of B.Rule 9015 to jury-trial demands made while B.Rule 9015 was in effect would not bar a party from filing a new demand after the date of abrogation). In the absence of any other considerations, we would be likely to hold that the time-frames set forth in F.R.Civ.P. 38 should be borrowed by us, and therefore we would ordinarily require a party to make a jury demand within the 10–day period of F.R. Civ.P. 38(b) or be held to have at least implicitly waived the right to have a jury trial.

However, here, there was one element of ambiguity added by our Order of April 4, 1988. It was certainly not illogical for the Plaintiff to have assumed, as he now claims, that we, in effect, substituted the deadline date of August 1, 1988, recited in our Order, for the time-strictures of F.R. Civ.P. 38 in the absence of their direct application. While this ambiguity would not have troubled us if B.Rule 9015 had still been intact, because we do not think any party should assume an implicit revision of procedural rules on the basis of an ambiguous court order, the abrogation of B.Rule 9015 and the lack of any indicia elsewhere in the Bankruptcy Rules that the F.R.Civ.P. 38 or the Federal Rules of Civil Procedure generally shall fill the interstices in those few instances where they are not incorporated into the Bankruptcy Rules [5] creates an additional ambiguity.

▮ The right to a jury trial "[i]n Suits at common law" is "preserved" by the Seventh Amendment to the United States Con-

5. Since the 7000 series of the Bankruptcy Rules

expressly incorporates most of the Federal

stitution. The Supreme Court has consistently held that courts must indulge in every reasonable presumption against waiver of the Seventh Amendment right to a jury trial. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959); *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937); *Hodges v. Easton*, 106 U.S. 408, 412 (1882). *See also, e.g., Pernell v. Southall Realty*, 416 U.S. 363, 383–84, 94 S.Ct. 1723, 1733–34, 40 L.Ed.2d 198 (1974); and *National Acceptance Co. v. Myca Products, Inc.*, 381 F.Supp. 269, 270 (E.D.Pa.1974). Any waiver of a constitutional right must be knowing, voluntary, and intelligent. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 94–95, 92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556 (1972); *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1094–97 (3d Cir.1988).

Given these weighty considerations of federal constitutional law, we are most reluctant to conclude that the Plaintiff here has waived his right to a jury trial, irrespective of his failure to comport with the time strictures of F.R.Civ.P. 38(b) in making his demand for a jury trial. Given the ambiguities which cloud the application of those time strictures here, and the added ambiguity created by our Order of April 4, 1988, we decline to hold that the Plaintiff waived any right to a jury trial which he may have otherwise have had as long as his demand was made, as it was, prior to August 1, 1988.

E. THE PLAINTIFF APPEARS TO HAVE A RIGHT TO HAVE A JURY TRIAL CONDUCTED IN THE BANKRUPTCY COURT

◼ The final issue which we must address, i.e., whether we, as a bankruptcy court, can conduct a jury trial, is the most elusive of the three issues presented by this proceeding. The abrogation of B.Rule 9015, as we indicate above, is certainly some evidence that the Supreme court believes that bankruptcy courts cannot, under any circumstances, conduct jury trials, and that all jury trials permissible in bankruptcy proceedings must be conducted by the district court. However, this evidence is circumstantial and inconclusive. In deference to the holding of our district court, we conclude that, in certain, limited settings—and this appears to be one—a bankruptcy court not only can, but, despite its misgivings, must, conduct a jury trial.

There is a wealth of bankruptcy court decisions addressing the issue of the power of the bankruptcy courts to conduct jury trials. However, we shall confine our discussion to the three recent decisions of the Court of Appeals and applicable local district court decisions which address this issue. In *In re Harbour*, 840 F.2d 1165 (4th Cir.1988), *cert. filed sub nom. Perkinson v. Hoffman*, 56 U.S.L.W. 3807 (April 25, 1988), the court was confronted with an argument by defendants in a preference action that they were entitled to a jury trial in the bankruptcy court. After an exhaustive analyses of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); and *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932), the *Harbour* court concluded that the conclusion of *Katchen* that preference actions under the predecessor Bankruptcy Act were equitable in nature and hence that no right to a jury trial exists therein applies to the Bankruptcy Code. 840 F.2d at 1171–78. Then, in the course of considering and rejecting the defendants' argument that the existence of 28 U.S.C. § 1411 implicitly[6] preserves a right to a jury trial in the bankruptcy court, the court states that "it seems logi-

---

Rules of Civil Procedure by direct reference, it might be argued that the failure to include a direct reference to a particular Rule negates its application. There is now no reference to F.R. Civ.P. 38 in the national bankruptcy rules.

**6.** This statutory provision reads as follows:
§ 1411. Jury Trials
(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law

cal to infer from the structure of the 1984 Act that Congress intended all core proceedings to be determined by exercise of summary jurisdiction," *id.* at 1179, *i.e.*, that no core proceedings are subject to a right of trial by jury.

In the second case, *In re Chase & Sanborn Corp.*, 835 F.2d 1341 (11th Cir.1988), *cert. granted sub nom. Granfinanciera v. Nordberg*, — U.S. —, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988), the court had before it an action to set aside a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(2). Consistently with the holding in *Harbour*, the court concluded that the action before it, like *any* core proceeding, is "inherently equitable in nature," 835 F.2d at 1349, thus precluding a right to a jury trial.

However, the third case, *American Universal Insurance Co. v. Pugh*, 821 F.2d 1352 (9th Cir.1987), embraces somewhat distinct reasoning. As in the other cases, the *Pugh* court finds the action before it, a proceeding seeking to impose a constructive trust upon the debtors, is equitable in nature, and, therefore, the party seeking a jury trial was not entitled to same. *Id.* at 1356. However, the *Pugh* court does not address the issue of whether the proceeding before it is core or not as a factor in its analysis, utilizing instead a "law/equity test." *Id.* at 1355. It concludes that no jury trial is mandated in equitable proceedings such as that before it.

The difficulty in using the *Harbour* and *Chase & Sanborn* cases as a basis for our decision here is the presence of the decision of our District Court in *Kenval Marketing, supra,* directly to the contrary. There, Judge McGlynn not only concludes that the defendants in a case alleging both a preferential transfer and a fraudulent conveyance are entitled to a jury trial on both claims, 65 B.R. at 553–55, but also he expressly rejects the conclusion of those courts that the classification of a matter as a core proceeding eliminates a litigant's

constitutional right to a jury trial. *Id.* at 553. The court thus holds that, "[r]ather, once a proceeding is classified as a core proceeding, the court is still required to determine whether the action is one at law or lies in equity in deciding the right to a jury trial." *Id.* This reasoning may be supported by the decision in *Pugh,* where the court speaks in terms of a law/equity dichotomy separate and apart from the core/non-core dichotomy in determining whether a right to a jury trial exists in a bankruptcy proceeding. The *Kenval Marketing* result, however, is an effective withdrawal of the reference of the case to the district court because the bankruptcy court is found to be "somewhat limited in terms of space, staff and judicial personnel." *Id.* at 555.

We must confess that, in light of the reasoning expressed in *Harbour,* supported by the conclusion in *Chase & Sanborn,* we question the correctness of the conclusion of the *Kenval Marketing* court that a preference action or a fraudulent conveyance action is an action which should be classified as "at law" rather than "in equity." We believe that *Katchen*'s holding to the contrary regarding preference actions under the Bankruptcy Act cannot be so easily overcome.

However, we also believe that there is a category of core proceedings which are *not* equitable in nature. We also believe that the instant proceeding fits squarely within that category. We see no justifiable basis for concluding that, because a proceeding is core, it is necessarily equitable in nature, as do the *Harbour* and *Chase & Sanborn* courts. Therefore, we conclude that the Plaintiff here is entitled to a jury trial in this proceeding. In this regard, we point not only to the holding in *Kenval Marketing,* which goes farther than we would in classifying core proceedings as not equitable in nature, but the second decision by the District Court in *Globe Parcel,* 75 B.R. at 383–85,[7] where the court concludes

---

with regard to a personal injury or wrongful death tort claim.

(b) The district court may provide the issues arising under section 303 of title 11 to be tried without a jury.

**7.** Our holdings that this matter is a core pro-

that the fact that the plaintiff's choice of an equitable forum, i.e., the bankruptcy court, in the first instance, does not eliminate otherwise viable rights of the plaintiff to a jury trial under the Seventh Amendment. *Accord, In re George Woloch Co.*, 49 B.R. 68, 69–70 (E.D.Pa.1985) (parties to accounts receivable action are entitled to a jury trial).

We are not convinced that the statement of the *Kenval Marketing* court that our bankruptcy court is limited in space, staff, and personnel is meant to constitute a legal conclusion that this particular bankruptcy court cannot conduct a jury trial. The Clerk's office has assured us that facilities to conduct such a trial will be made available to us if needed. It must be recalled that the *Kenval Marketing* case was already before the district court on an appeal from this court's denial of a jury trial demand. Here, we have before us a proceeding of which neither party has sought to withdraw the reference to the district court, and hence the district court is in no way implicated in this proceeding. We fail to find any statute or rule which permits us to *sua sponte* suggest that the district court withdraw its reference of this proceeding to us. We therefore conclude that we can, and must, provide the forum for the jury trial which the Plaintiff demands.

## F. CONCLUSION/AFTERMATH

We do have some reservations as to our conclusion that, even in this matter, involving a core proceeding which presents an action at law, we, as a bankruptcy court, may conduct a jury trial. It is hoped that the Supreme court, having granted certiorari in the *Chase & Sanborn* case, will provide guidance to us in this area, at least in its next term. In light of the uncertainty involved in this issue, we would recommend that the Plaintiff here carefully rethink whether the jury demand is in his best interest, lest our holding be reversed and

the matter be required to be retried elsewhere or in a different format here. Furthermore, if the Plaintiff persists in his jury trial request, the Defendants may be well-advised to appeal this decision under 28 U.S.C. § 158(a). In the event of such an appeal, they could seek a stay of the possibly-unnecessary additional procedural steps which must be taken by this court to conduct a jury trial under B.Rule 8005. However, if neither party reacts as indicated above or otherwise by September 20, 1988, we are prepared to effectuate our decision and promulgate an order relating to the selection of a jury and other preparations for such a trial in our court on or about October 12, 1988.

One of the principal reasons which we articulated in reaching our conclusion in *Windsor* was our belief that a contrary result would create a large volume of mostly needless submissions of recommendations to the District Court. 67 B.R. at 793, 699–700. *See also A.I.A. Industries, supra*, 75 B.R. at 1017. We are struck with the irony that the *Windsor* decision, coupled with this decision, opens this court to a jury trial demand in not only this case but also in accounts-receivable actions arising pre-petition, which could clog the well-oiled speed of disposition of matters in our court. However, we would observe that a strong potential of demands for jury trials in actions to collect *post*-petition accounts receivable has *always* existed, and we have not been clogged by jury requests in such cases. It may be that dispositions of proceedings in bankruptcy cases have been hampered by parties who requested jury trials for the sole purpose of obtaining withdrawals of references of such proceedings to the District Court on the assumption that this court could not conduct jury trials. This decision should alert such parties to the possibility that a request for a jury trial is not an automatic ticket to a successful withdrawal of reference to the

ceeding or in *Windsor* that garden-variety pre-petition accounts receivable actions are core proceedings are not at variance from the *Globe Parcel* conclusion that the complex causes of action, arising pre-petition, in issue in *Globe Parcel* are non-core. *Compare AIA Industries,*

*supra*, 75 B.R. at 1018–20. We also concur with the conclusion in the initial *Globe Parcel* decision that, if a matter is determined to be non-core, it is totally impractical for the bankruptcy court to consider conducting a jury trial. 71 B.R. at 326.

**136**

district court. And this may discourage forum-shopping and attempts to delay disposition of proceedings in our court.

In the last analysis, speculation as to adverse practical consequences must be subordinated to what the applicable law mandates that we do. As we believe the law of this district mandates the result reached here, an Order consistent with this Opinion will be entered by us.

## *ORDER*

AND NOW, this 6th day of September, 1988, upon consideration of the Briefs of the parties addressing the issues set forth in our Order of August 4, 1988, it is hereby ORDERED as follows:

1. The above-captioned adversary proceeding is determined to be a core proceeding.

2. The Plaintiff's demand for a jury trial shall be honored and this court shall conduct a jury trial in this proceeding unless the said demand is withdrawn or the Defendants file a timely appeal from this Order. Counsel are hereby attached for said trial from October 14 through October 21, 1988 week. Counsel shall also remain attached for trial on October 12, 1988, in the event that no jury trial is ultimately conducted.

3. The Plaintiff shall advise the court, by letter sent to the court on September 20, 1988, as to whether he still wishes to demand a jury trial, whether the Defendants have filed an appeal, or whether there is any other impediment to our conducting a jury trial in this matter.

4. Thereafter, we shall enter a further Order as to precisely what procedures shall be followed in conducting the trial of this proceeding.