**In re 222 LIBERTY ASSOCIATES, Debtor.**

**Brad COHEN and First Fidelity Insurance Corp., Plaintiffs,**

**v.**

**222 LIBERTY ASSOCIATES, Robert G. Bauer, Donald Wolk, and Philip Banks, Defendants.**

**222 LIBERTY ASSOCIATES, Plaintiff,**

**v.**

**MERIDIAN BANK and Donald Wolk, Defendants.**

Bankruptcy No. 88–115355.
Adv. Nos. 88–21305, 88–21255.

United States Bankruptcy Court, E.D. Pennsylvania.

May 22, 1989.

See also, Bkrtcy., 94 B.R. 381.

Stephen Raslavich, Philadelphia, Pa., for debtor.

Robert J. Casey, Philadelphia, Pa., for Philip J. Banks.

Andrew N. Schwartz, Philadelphia, Pa., for Creditors' Committee.

Thomas Martin, Philadelphia, Pa., for plaintiffs/Brad Cohen and First Fidelity Ins. Corp.

Laurence J. Kaiser, Kronish, Lieb, Weiner & Hellman, New York City, for Donald L. Wolk.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Recent developments in the primary of the two above-captioned adversary proceedings, Adversary No. 88–2130,[1] exemplify the confusion that can result when already-difficult concepts regarding rights to a jury trial are introduced into bankruptcy, an area of law replete with its own particular confusion concerning jury trials. We conclude that one of the Debtor-partnership's two general partners, Donald L. Wolk (hereinafter "Wolk"), in belatedly demanding a jury trial as to only claims asserted by him and the other general partner of the Debtor, Philip J. Banks (hereinafter "Banks"), against each other, has waived his jury-trial right both procedurally and substantively. We also question whether a right to a jury trial exists as to the claims of Banks and Wolk *inter se*, which may themselves be core and are enmeshed in an equitable core proceeding. Therefore, we reaffirm our intention to try all claims in this proceeding non-jury in this court.

The underlying facts are as follows. Prior to the commencement of the Debtor's bankruptcy case, in July, 1987, the Debtor and First Fidelity Insurance Corp. (hereinafter "First Fidelity") entered into an agreement (hereinafter "the Agreement"),

---

**1.** Adversary No. 88–2125S was consolidated with Adversary No. 88–2130S by agreement of all interested counsel on December 7, 1988. Although we understand that Adversary No. 88–2125S has been in most respects settled, we have continued to list this proceeding together with Adversary No. 88–2130S at the request of the Debtor's counsel, because there may be some residual issues remaining in that matter. All references hereinafter are exclusively to Adversary No. 88–2130S.

whereby the Debtor would sell its only asset, an office building located at 110 South 16th Street, Philadelphia, Pennsylvania, to First Fidelity for $9.6 million. Pursuant to the Agreement, First Fidelity was required to place a $250,000.00 purchase deposit in escrow. The Agreement provided for return of the deposit if the Debtor breached the Agreement, and retention of the deposit by the Debtor as liquidated damages if First Fidelity breached the Agreement. The sale never took place, and the parties to the Agreement have ever since disputed who was at fault and to whom the escrow deposit should be paid.

On April 13, 1988, prior to the commencement of the Debtor's bankruptcy case, First Fidelity and Brad Cohen (hereinafter "Cohen"), the principal of First Fidelity (hereinafter Cohen and First Fidelity are referenced as "the Plaintiffs"), commenced an action in equity in the Court of Common Pleas of Philadelphia against the Debtor, Wolk, Banks and one of the escrow agents. The Complaint, as amended, had two counts. The first count sought rescission of the Agreement and return of the $250,000.00 escrow deposit. The second count sought reimbursement of costs and expenses, including unspecified attorneys' fees, on the grounds of the alleged misconduct of the Debtor in inducing First Fidelity to enter into the Agreement.

On May 3, 1988, an involuntary petition in bankruptcy was filed against the Debtor, ultimately resulting in the entry of a consensual order for relief on September 8, 1988. Shortly thereafter, on October 11, 1988, the foregoing state court litigation was removed to this court. Upon a motion by Plaintiffs for relief from the automatic stay, we entered an Order on January 25, 1989, granting the relief, but specifically preventing the entry of any requests for monetary relief against the Debtor. This Order was intended to limit the Plaintiffs' claim to merely a determination of who was entitled to the escrow deposit.

Prior to the removal, on or about May 20, 1988, Banks, through counsel then acting for all the defendants, had filed and served an answer to the Plaintiffs' Complaint.

Contained therein was a denial of the allegations in the Plaintiffs' Complaint and a Counterclaim seeking recovery of the $250,000.00 escrow deposit by the Debtor. By Order dated January 9, 1989, upon separate motions by Wolk and the Plaintiffs in this court, the firm which had been representing the Debtor up to that time, Abraham, Pressman, and Bauer, P.C. (hereinafter "APB"), was disqualified from representing the Debtor any further because of its close association with Banks, and the development of conflicts of interest among Banks, Wolk, and the Debtor. No determination was made at that time as to whether ABP could continue to represent Banks in any capacity, including appearing for him in this adversary proceeding.

On January 25, 1989, the date established for trial of this proceeding, we conducted a colloquy including counsel for the Debtor replacing ABP; and counsel for the Official Unsecured Creditors' Committee (hereinafter "the Committee"), the Plaintiffs, and Wolk. Banks was not represented. At its close, we entered a consensual Pre-Trial Order, detailing dates for exchange of exhibits and witness lists and scheduling the trial of this proceeding on March 8, 1989.

On March 2, 1989, new counsel entered an appearance for Banks. Replacement counsel for the Debtor and new counsel for Banks separately moved to continue the trial date, but these motions were denied. On March 6, 1989, Banks' counsel moved to file an attached lengthy Amended Answer containing Counterclaims against the Plaintiffs and Cross-claims against Wolk.

The principal allegations in Banks' cross-claims against Wolk were as follows: (1) Wolk committed fraud and misrepresentation against Banks by allegedly concealing the fact that Wolk had an interest in First Fidelity, the purchaser of the Debtor's property; by allegedly delaying the sale of the property; and by contracting for the property at an unfair price; (2) Wolk and Cohen allegedly engaged in a "civil conspiracy" by concealing the true identity of the purchasers of the property of the Debtor; and (3) Wolk thus breached his fiduciary obligations to Banks as a general partner

of the Debtor and "intentionally interfered" with the performance of the Agreement between the Debtor and First Fidelity.

Counsel for all interested parties appeared on March 8, 1989, and were asked their position as to Banks' motion to file this new pleading. Counsel for the Debtor and the Committee supported the motion. Wolk's counsel vigorously opposed it, claiming that allowing it to be filed would significantly delay the trial. The Plaintiffs' counsel somewhat less vigorously opposed it on the grounds of untimeliness, opening a disputed dialogue on the issue of whether ABP had been disqualified from representing Banks and whether Banks was dilatory in obtaining substitute counsel. We did not feel that Banks had necessarily been dilatory under the circumstances and, in light of the liberality accorded to allowing amendments to pleadings articulated in Bankruptcy Rule (hereinafter "B.Rule") 7015 and Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 15(a), indicated an intention to grant the motion. We then gave the Plaintiffs' counsel, who was pressing to try the case as soon as possible, the choice of going forward with the trial on that date, without further discovery by any party, or obtaining a continuance. Said counsel opted for a continuance, and requested a 30–day delay. All counsel present ultimately agreed to an amended pre-trial Order which contemplated closing the pleadings by April 7, 1989; completing discovery by May 8, 1989; and trial on June 7, 1989, which was memorialized in our Order of March 9, 1989.

On April 7, 1989, the Plaintiffs filed a motion to dismiss Banks' counterclaim, contending that it lacked requisite specificity. Concluding, after analyzing same, that this pleading was interposed for delay and recognizing that delay would be occasioned by listing this motion for argument, we summarily dismissed it in an Order of April 10, 1989, requiring the Plaintiffs to answer Banks' pleading by April 21, 1989, and reit-

erating all other conditions of the March 9, 1989, Order.

On April 10, 1989, *after* the April 7, 1989, deadline, Wolk filed a multi-faceted motion, which *inter alia*, requested summary judgment on Banks' cross-claims against him, and sought to enjoin or stay the proceedings·on the ground that their promulgation violated the automatic stay and the jurisdictional power of this court, especially since Wolk intended to (but had not yet) filed a demand for a jury trial. After carefully analyzing same, we ascertained that, although the work-product submitted on behalf of Wolk was considerably more complex than that submitted on behalf of the Plaintiffs, this pleading, too, was interposed principally to effect delay. We quickly prepared and filed an Order denying this motion as well, stating that Wolk "shall file and serve an Answer to Banks' Pleadings" by April 21, 1989, and reciting that, in all other respects, the Order of March 9, 1989, remained in effect.

On April 21, 1989, Wolk included, within his answer, cross-claims against Banks on the ground that Banks had mismanaged the Debtor, and included a demand for a jury trial as to the claims of Wolk and Banks *inter se* only. This was followed by an April 24, 1989, filing, in the district court, of a motion for leave to appeal our Order of April 10, 1989; withdraw the reference of the claims between Wolk and Banks only; and stay only those proceedings between Wolk·and Banks in our court. Among the reasons for requesting the district court to act, in addition to assertions that this court was overstepping its jurisdiction bounds, was the suggestion that significant discovery battles between Wolk and Banks had begun, with which the district court could prevent this court from being faced by promptly withdrawing the reference of these proceedings. Wolk was careful throughout the pleadings to indicate no objection to this court's retaining and exercising jurisdiction over the original claim between the Plaintiffs and the Debtor.[2]

---

2. This appeal has been given the designation Misc. Co. 89–0265 and had been assigned by District Judge Herbert J. Hutton. The papers were not forwarded to Judge Hutton until May 9, 1989. We then learned that, on May 22, 1989, this matter had been transferred by Judge Hut-

Wolk, as well as the Plaintiffs and Banks, did indeed file and, by initially refusing to cooperate, necessitated considerable motions and counter-motions relating to discovery. However, by Orders of April 27, 1989, and May 11, 1989, we confirmed resolution of all of these disputes, largely due to the cooperation of counsel themselves when they perceived that the trial date of June 7, 1989, would remain intact. At present, only this dispute over Wolk's right to a jury trial remains as an unresolved pre-trial issue. Our Order of May 11, 1989, reiterated that the parties should prepare for trial on the assumption that the entire case, as it presently exists, will be heard by us non-jury on June 7, 1989. Wolk is therefore on notice that, unless the district court withdraws the reference of the Wolks–Banks dispute prior to June 7, 1989, a trial on all issues will be forthcoming on that date.[3]

█ We believe that, on a substantive basis and perhaps also on a procedural basis, the actions taken by Wolk in this proceeding, as described aforesaid, constituted a waiver of any seventh amendment right to a jury trial which he may have had as to any issues in this proceeding. We also doubt that he had any such right.

The starting point for our procedural analysis is F.R.Civ.P. 38(b) and (d). We have already indicated that we consider applicable to cases in our court the requirements set forth therein that a jury demand be served "not later than 10 days after service of the last pleading directed to such issue" and that "[t]he failure of a party to serve a demand as required by this rule and file it ... constitutes a waiver by him of trial by jury." *In re Jackson*, 90 B.R. 126, 132 (Bankr.E.D.Pa.1988). *Accord, In re Kaiser Steel Corp.*, 95 B.R. 782, 786 (Bankr.D.Colo.1989); and *In re Direct Satellite Communications, Inc.*, 91 B.R. 7, 9 (Bankr.E.D.Pa.1988).

ton to the Honorable James McGirr Kelly. We have no indication that Judge Kelly will be likely to address this matter prior to June 7, 1989.

**3.** *See* page 642 n. 2 *supra.*

Here, Wolk did not file his demand for a jury trial as to any issues in this proceeding until April 21, 1989. In our Order of March 9, 1989, the time deadlines imposed by agreement of all counsel included a requirement that all responsive pleadings must be filed on or before April 7, 1989. This deadline was imposed on *all* pleadings, to allow thirty (30) days thereafter for discovery and thirty (30) more days after completion of discovery before trial. All pleadings were therefore to *end* on April 7, 1989. The terms of the March 9, 1989, were reiterated in both of our Orders of April 10, 1989, denying, respectively, the motions of the Plaintiffs and Wolk to dismiss certain aspects of Banks' amended pleadings. It therefore appears that the last day upon which Wolk could have demanded a jury trial, in accordance with F.R.Civ.P. 38(b) and (d), would have been April 17, 1989. His demand was filed four days thereafter, and hence his right to a jury trial appears to have already been waived as of that date.

We acknowledge that, in our Order of April 10, 1989, denying his motion to dismiss, we directed Wolk to file and serve an Answer to Banks' pleading by April 21, 1989. However, this directive did not, nor do we think it could reasonably be so construed, provide any dispensation to Wolk as to any filings required by, or excuse him from totally failing to adhere to, the April 7, 1989, deadline imposed in the Order of March 9, 1989, upon all parties to file *all* pleadings. It was merely a directive to Wolk that such pleadings *must* be filed by him by that date, or possible sanctions would attach against him for his continued failure to adhere to the deadline imposed in the March 9, 1989, Order. The reference to the fact that all other deadlines provided in the March 9, 1989, Order remained in full force and effect was intended to underscore this thought.[4]

**4.** This sequence of events here is therefore distinct from that in *Jackson*, where we concluded, in what we considered a very close call, that the plaintiff-trustee had not waived his right to a jury trial by failing to comply with F.R.Civ.P. 38(b) and (d). There, on April 4, 1988, long prior to the completion of pleading, we entered

We also observe that the same sort of procedural "waiver of silence" which was found present in *Direct Satellite, supra,* 91 B.R. at 9, was present here. Our Order of March 9, 1989, was entered, by agreement of counsel, after Wolk was cognizant that Banks' cross-claims against him would be entertained by us. We set the trial date of June 7, 1989, obviously expecting to commence trial in a non-jury mode on that date. This constituted a firm commitment to such a trial on this court's busy schedule. It was incumbent upon Wolk to *immediately* object to the scheduling of the matter for a non-jury trial if that was his intention, not allow the scheduling to be uprooted by the raising of a jury-trial issue thereafter.

However, more importantly than these procedural difficulties, we believe that, given the context of his actions regarding the trial of the remainder of this proceeding, Wolk has waived any right to a jury trial on substantive grounds. We begin this analysis by considering the nature of this proceeding prior to the annexation of the claims of Banks and Wolk *inter se.*

█ First, we conclude that this action was at all times a core proceeding. This characterization is made difficult by the fact that it was removed from state court, after the pleadings were well under way, and hence the requisite necessity to plead whether it was core or non-core was obviated. *See* B.Rule 7008(a).

The substance of the suit is, however, ascertainment of the right to the $250,000 escrow deposit as between the Plaintiffs and the Debtor. The proceeding is, then, the archetype of a dispute over specific funds held in escrow, such as we considered in *In re TM Carlton House Partners, Ltd.,* 93 B.R. 859, 865–72 (Bankr.E.D. Pa.1988). There, we concluded that funds placed in escrow by the non-debtor, pursuant to a specific contractual undertaking with the debtor, were in fact property of the debtor's estate. *Id.* at 865–67. We also determined that, insofar as the debtor was seeking an order requesting that the escrowed funds be turned over to its estate, the proceeding was core, as within the scope of 28 U.S.C. § 157(b)(2)(E). *Id.* at 872. Therefore, from the vantage point of the Debtor, this proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(E).

Viewing this proceeding from the vantage point of the Plaintiffs, who are also seeking possession of the escrow fund, yields a similar result. The Plaintiffs are asserting a claim to the $250,000, which is a claim against property of the Debtor's estate. In *In re Meyertech Corp.,* 831 F.2d 410, 417–18 (3d Cir.1987), the Court of Appeals concluded that any action brought by a creditor against a debtor for monetary damages is in substance an action concerning the allowance of a claim against the debtor's estate, and hence is a core proceeding under 28 U.S.C. § 157(b)(2)(B).[5] In the instant proceeding, while any request for monetary relief from the Debtor is stayed until further order of this court, it certainly appears likely that the result will affect the Debtor's estate monetarily. Therefore, we believe that it may also be classified as core pursuant to 28 U.S.C. § 157(b)(2)(B).

█ Even if the proceeding were not core, it seems clear that the proceeding has

---

an Order allowing the parties until August 1, 1988, to, *inter alia,* demand a jury trial, despite that this date was about thirty days after the date on which pleadings were deemed due by the terms of that same order. Hence, we concluded there that the plaintiff had reasonably relied on August 1, 1988, as the deadline for filing a jury demand despite the time structures of F.R.Civ.P. 38(b) and (d). 90 B.R. at 132. Here, the April 7, 1989, pleading deadline, appearing to impose, by force of F.R.Civ.P. 38(b) and (d), an April 17, 1989, jury-demand deadline, was manifested in the court's Order of March 9, 1989. There was no pre-deadline action on the part of the court which indicated

any express intention to change the date for requesting a jury trial, as there has been in *Jackson.* Therefore, the April 17, 1989, date remained intact.

5. Even though the Plaintiffs have not filed a formal proof of claim in the Debtor's bankruptcy case and the April 17, 1989, bar date has passed, the prior litigation of this proceeding in the bankruptcy court would certainly appear to constitute an informal proof of claim. *See, e.g., In re Clark,* 96 B.R. 569, 573 (Bankr.E.D.Pa. 1989); and *In re Ungar,* 70 B.R. 519, 521–23 (Bankr.E.D.Pa.1987).

never been legal in nature, an action at law, but, rather, has been an action in equity. It was expressly filed as an action "in equity" in the state courts, where there is a distinction between actions at law and in equity. *See* Pennsylvania Rules of Civil Procedure 1501–91. The answer filed by the original defendants was designated as an answer to the "Complaint in Equity," thus recognizing and thus implicitly concurring that the proceeding was properly filed in equity. A right to a jury trial only attaches as to an action which would have been classified as "at law" as opposed to "in equity" at the time of the ratification of the federal Constitution in 1791. E. Gibson, *Jury Trials in Bankruptcy: Obeying the Command of Article III and the Seventh Amendment*, 72 MINN.L.REV. 967, 997 n. 132 (1988). In *Jackson, supra,* 90 B.R. at 133–35, we allied ourselves with those courts which have concluded that the law/equity distinction is more significant than the core/non-core distinction in determining whether a jury trial is permissible in any particular proceeding in bankruptcy court. Therefore, our determination that the proceeding is core is not decisive as to whether a right of jury trial attaches. However, proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(B) or (b)(2)(E), as proceedings within the particular summary jurisdiction of the bankruptcy court, would uniformly appear to be equitable in nature. *Compare Jackson, supra,* 90 B.R. at 134 (proceeding held to be core under 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O), only because it concerned post-petition matters, was found to be legal in nature rather than equitable).

■ Furthermore, this proceeding was apparently properly designated as an action in equity from its onset. It therefore appears to clearly be equitable in nature. While there may be a category of core proceedings which are not equitable which may be tried by jury in bankruptcy court, there can be no dispute that an action which is equitable in nature, whether classified as core or non-core, cannot be tried by jury.[6] Therefore, it is clear that this proceeding, as it existed prior to the addition of the Wolk–Banks controversy, was core and could not be tried by jury.

A difficult question remains as to the impact of the introduction of counterclaims, cross-claims, or third-party claims which might raise claims triable by jury upon an original proceeding not triable by jury in bankruptcy court. It appears to us, and it is not clear that any parties including Wolk dispute the fact, that the claims of the Plaintiffs and the Debtor *inter se* and those of Wolk and Banks *inter se* in this proceeding are interwoven. The role of Wolk in allegedly breaching his fiduciary duties as a partner to Banks and the Debtor or by consorting with the Plaintiffs (or the mismanagement of the Debtor by Banks) is clearly likely to be relevant in determining whether the Plaintiffs or the Debtor breached the terms of the Agreement. Likewise, Wolk's actions in the course of negotiations pertinent to the Agreement are likely to be relevant in determining whether he breached any fiduciary duties to Banks. Therefore, the claims not triable by jury in the original action and those arguably triable by jury which have been added to it are intrinsically intermingled. Findings in one action may bear heavily on the result in another. *Compare Kaiser Steel, supra,* 95 B.R. at 791–92 & n. 6 (court severs claims triable by jury from proceeding in bankruptcy court where it apparently finds that the possible *res judicata* effect of the bankruptcy proceeding will be minimal upon the claims triable by jury due to lack of any substantial interrelationship between those claims).

Wolk, citing *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), argues that, here, he will be deprived of his otherwise clear right to trial by jury if the claims of Banks and him

---

**6.** The statement in our Order of April 10, 1987, which suggested that the fact that the proceeding in *Direct Satellite* was core in nature was decisive in ascertaining whether a jury trial was appropriate there was therefore not quite accurate. We should have emphasized, as we did in our *Direct Satellite* Memorandum itself, 91 B.R. at 8, that the significant factor was that the underlying proceeding there, classifiable under 28 U.S.C. § 157(b)(2)(C), was equitable in nature, like the proceeding here.

*inter se* are not severed from an action in which the claims which he wishes us to try non-jury and those which he wishes to save for a separate jury trial. However, as we read *Beacon Theatres v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959); and *Dairy Queen, supra,* in a case presenting intermingled issues, some of which are triable by jury and some of which are not, the issues triable by jury must be first tried by jury except in narrowly-limited circumstances. *See* 5 J. MOORE, FEDERAL PRACTICE, ¶ s 38.14, 38.16[2], 38.16[4], at 38–149 to 38–150, 38–158 to 38–159, 38–161 to 38–163 (2d ed. 1988).

Therefore, applying *Beacon Theatres* and *Dairy Queen,* it would appear that, if the claims between Wolk and Banks are triable by jury, they would have to be heard first, followed by trial of the equitable claims in the action as it existed prior to Banks' amended answer and its claims against Wolk.

However, Wolk clearly does not desire this court to proceed in this sequence. He is anxious to resolve the dispute between the Plaintiffs and the Debtor through the swift decision-making process of this court, while interposing measures which would tend to delay the resolution of his disputes with Banks. He has requested a jury trial only as to his disputes with Banks, and specifically eschews any jury request as to the remainder of the proceeding. He asks the district court to withdraw the reference of his disputes with Banks and try those at a later time, after the original dispute is resolved here. Alternatively, he asks that we sever his controversy with Banks from the proceeding and allow that to be resolved after the rest of the trial at some later time and place. He appears oblivious to the fact that following this sequence would fly in the face of *Beacon Theatres* and *Dairy Queen.*

We believe that Wolk's schizophrenic stance towards the sequence of trial of these matters reflects a waiver of a jury trial as to all of them. Only a contention, that he is entitled to a jury trial as to all claims against him or a contention that the

portion of the case triable by jury must be heard first would be consistent with Wolk's position that he is entitled to a jury trial as to his disputes with Banks. Clearly, he is not asking for either of these alternatives to be followed. We can give him what he apparently wants *most,* i.e., a swift trial of the dispute between the Plaintiffs and the Debtor non-jury, only by compromising his jury-trial rights as established in *Beacon Theatres* and *Dairy Queen.* Urging such an impermissible compromise is, we believe, effectively a substantive waiver of Wolk's right to a jury trial as to his disputes with Banks.

This conclusion is consistent with the reasoning of *Katchen v. Landy,* 382 U.S. 323, 338–40, 86 S.Ct. 467, 477–78, 15 L.Ed.2d 391 (1966). There, the Court held that the non-debtor's submission of claims against a debtor to the jurisdiction of the bankruptcy court constituted an acceptance of the bankruptcy court's summary jurisdiction and, effectively, a waiver of any right to trial by jury as to related issues. Here, by agreeing to submit claims, in the original proceeding to which he is a party, to this court non-jury prior to determination of his disputes with Banks, Wolk has effectively consented to the non-jury submission to this court of all of the closely-related claims asserted in this action. Wolk was not without alternatives. He could have tried to obtain a remand of this proceeding to state court at the outset, as we invited all of the parties to do in an Order of October 14, 1988. Even at this point, he could seek a withdrawal of the reference of this entire proceeding, as opposed to a part thereof, to the district court. Because we believe all of the claims to be intermingled, we believe that withdrawing the allegedly jury-triable portion would run afoul *Beacon Theatres* and *Dairy Queen* and would be improper, but that is for the district court to decide. Put another way, we do not believe that Wolk can consistently partake of the benefit of swift bankruptcy court resolution of the dispute between the Plaintiffs and the Debtor and yet avoid bankruptcy court jurisdiction over a piece of the same controversy, which he wishes to avoid.

This is the unarticulated policy behind the result reached by us in *Direct Satellite, supra,* 91 B.R. at 8–9. There, a claim potentially triable by jury was made against a third-party defendant in the course of what was clearly an equitable, core proceeding, not triable by jury. We concluded that, unless he chose to attempt to remove the entire proceeding with which the claims against him were enmeshed to a different forum, the third-party defendant's jury demand was forced to be compromised and hence was substantively waived by his choosing to remain in this court. Other courts appear to have reached similar results. *See Kaiser Steel, supra,* 95 B.R. at 786–89; *In re Kroh Bros. Development Co.,* 91 B.R. 889, 891–93 (Bankr.W.D.Mo.1988); *In re McCorhill Publishing Co.,* 90 B.R. 633, 637–38 (Bankr.S.D.N.Y.1988); and *In re Pro Machine, Inc.,* 87 B.R. 998, 1002–04 (Bankr.D. Minn.1988).

There is one alternative substantive ground on which Wolk's jury demand could be rejected. The foregoing discussion has assumed that the claims of Wolk and Banks *inter se* are in and of themselves non-core proceedings, triable by jury. However, we observe that the claims appear to be "proceedings affecting ... the equity security holder relationship," within the scope of 28 U.S.C. § ,157(b)(2)(O). Certainly, they profoundly affect the relationship between the Debtor's only two general partners, which are issues of grave concern to the Debtor and of possible significant import to its reorganization.[7] We would be disinclined to conclude that claims which *themselves* would, separately, constitute a core proceeding, appended to a proceeding which is already an equitable, core proceeding, would not be considered equitable as well and hence not triable by jury.

We have located only a few cases which have expressly considered the issue of whether an intra-partner dispute should be classified as core under § 157(b)(2)(O). They consistently have held that such disputes *are* core. *See In re Securities*

*Group,* 89 B.R. 190 (M.D.Fla.1988); *In re Securities Group 1980,* 89 B.R. 189 (M.D. Fla.1988); and *In re Lion Capitol Group,* 46 B.R. 850, 855 (Bankr.S.D.N.Y.1985). *Cf. In re DiMartino,* 97 B.R. 139 (Bankr.D.R.I. 1989) (proceeding in which general partners claim that another partner was involved in a sale in which the debtor was buyer on behalf of the seller, in violation of his fiduciary duties, similar to the facts here, is determined by the court with no discussion of whether the proceeding was core). *But see* 1 COLLIER ON BANKRUPTCY, ¶ 3.01[21][b][iii], at 3–45 to 3–47 (15th ed. 1989) (concludes, without citing contrary authority, that such a "broad" reading of § 157(b)(2)(O) is "incorrect").

We therefore continue to adhere to our conclusion that Wolk's demand for a jury trial must be stricken on a variety of grounds. We will therefore enter an Order accordingly.

---

7. We do observe, however, that, despite his differences with Banks, Wolk has proposed his own Plan of Reorganization, which he hopes to

have confirmed at a hearing tentatively scheduled on June 7, 1989.