In re GLEN EAGLE SQUARE, INC., Debtor.

GLEN EAGLE SQUARE, INC., Plaintiff,

v.

MEEHAN–WEINMANN, INC., Defendant/Counterclaim Plaintiff,

v.

FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Additional Counterclaim Defendant,

v.

AMERICAN CEILINGS, INC., American Floors, Inc., Blackwell & Sons, Inc., Cappelli Excavating Co., Inc., Duggan and Marcon, Inc., Dale Construction Company, Fire Tech Automatic Sprinkler, Inc., Giles J. Cannon, Inc., Hol-

zhauer Tile Co., John J. Dougherty & Son, Inc., Lippincott Engineers, Madison Construction Co., Philadelphia Glass & Metal Inc., Salvino Steel & Iron Works, Inc., Spectrum Electric, Inc., Winslow Mechanical Contractors Inc., Third Party/Additional Counterclaim Defendants.

Bankruptcy No. 91–10796S.
Adv. No. 91–0300S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 5, 1991.

Valentina Viletto, Kevin J. Carey, Willcox Hamilton & Putnam, Philadelphia, Pa., for debtor.

Richard L. Berman, Dechert Price & Rhoads, Philadelphia, Pa., for 1st Union Bank of North Carolina.

Stephen M. Dodd, Hoyle, Morris & Kerr, Philadelphia, Pa., for Madison Const. Co.

John T. Carroll, III, Wessel & Carpel, Philadelphia, Pa., for Hobbs & Co.

Alexander N. Rubin, Jr., Peter C. Cilio, Rubin, Quinn, Moss, Heaney & Patterson, Philadelphia, Pa., for Salvino Steel & Iron Works, Inc.

Sam L. Warshawer, Jr., Venzie, Phillips & Warshawer, Philadelphia, Pa., for Meehan–Weinmann, Inc.

John K. Fiorillo, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., for Liberty Bank.

Jonathan S. Ziss, Silverman & Coopersmith, Philadelphia, Pa., for Precision Piping.

Anthony Carrozza, III, Media, Pa., for Graveley Roofing.

Francis Hadden, Manta and Welge, Philadelphia, Pa., for American Floors.

Keith N. Leonard, Leonard, Tillery & Davison, Philadelphia, Pa., for Spectrum Elec., Inc.

Thomas E. Weaver, Jr., Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, Pa., for Duggan and Marcon, Inc.

Spencer Ervin, Philadelphia, Pa., for Dale Const. Co.

Tara L. Flynn, Harvey, Pennington, Herting & Renneison, Ltd., Philadelphia, Pa., for Lippincott Engineers.

Robert A. Hoffa, Hoffa & Freemas, Bensalem, Pa., for Philadelphia Glass & Metal, Inc.

Mary Walrath, Clark Ladner Fortenbaugh & Young, Philadelphia, Pa., for American Ceilings, Inc.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

Richard M. Cappelli, Media, Pa., for Cappelli Excavating Co., Inc.

Michael E. Furey, Kilcoyne, Furey & Heckman, Trooper–Norristown, Pa., for Salvino Steel & Iron Works, Inc.

Steven D. Usdin, Adelman Lavine Gold & Levin, Philadelphia, Pa., for VRG Corp.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

We are herein describing our reasons for concluding that a creditor who files a proof of claim in a bankruptcy case ("the claimant") subsequent to the filing of an adversary proceeding against the claimant by the debtor is not entitled to a jury trial as to any of the claims which the claimant and the debtor have against themselves *inter se*, nor as to counterclaims raised by the claimant against another creditor and which the other creditor raises against the claimant in response.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor, GLEN EAGLE SQUARE, INC. ("the Debtor"), the owner of a newly-constructed shopping center located proximately to Concordville, Delaware County, Pennsylvania, filed the underlying voluntary Chapter 11 bankruptcy case on February 13, 1991.

On March 25, 1991, MEEHAN–WEINMANN, INC. ("MW"), the general contractor on the construction project, filed a motion seeking relief from the automatic stay to pursue arbitration of its disputes with the Debtor. After a lengthy hearing of April 24, 1991, in which not only the Debtor but also the secured lender on the project, FIRST UNION NATIONAL BANK OF NORTH CAROLINA ("the Bank"), appeared and opposed the motion, we denied the motion in a Memorandum and Order of May 1, 1991, reported at 1991 WESTLAW 71782.

On April 24, 1991, the Debtor, having advised us of its intention to do so in the course of the hearing on the above-referenced motion, filed the instant adversary proceeding ("the Proceeding"). On April

24, 1991, and again in a colloquy with counsel on May 1, 1991, we invited MW's counsel to pick the trial date of the Proceeding. When he declined our invitation, we established June 26, 1991, the date selected by the Clerk's office in the ordinary course, as the trial date. MW not only appealed our Order of May 1, 1991, but also sought to stay the progress of the Proceeding pending that appeal on the ground that the trial of the Proceeding would cause the court to hear and decide several matters concerning which MW alleged that it was entitled to arbitration in the first instance.

On June 6, 1991, the Honorable J. William Ditter of the district court, in Misc. No. 91–MC–0337 (E.D.Pa.), entered an Order which "temporarily remanded" a stay motion before that court to us to allow MW to present a formal motion to request a stay to this court. On June 20, 1991, we issued a Memorandum and Order, reported at 1991 WESTLAW 111486, denying the request for a stay.

On June 24, 1991, Judge Ditter issued an Order denying a subsequent request to him for a stay, although he did direct that the trial be postponed from June 26, 1991, to no earlier than July 8, 1991. At a status conference held in lieu of the trial on June 26, 1991, as a result of that Order, the Debtor and MW presented a Stipulation regarding the timing of pretrial events relative to the Proceeding. After a further colloquy of June 26, 1991, the Debtor and MW agreed, *inter alia*, to a trial date of the Proceeding of September 23, 1991. There was no mention of any jury-trial request by any party, and we hence assumed that a date for a non-jury trial had been selected. The only dissent to the scheduling arose from the Bank, which contended that this court should address the issue of the priority of the liens of MW and the Bank against the Debtor separately, prior to September 23, 1991.

On June 28, 1991, just prior to the established claims bar date in this case of June 30, 1991, MW filed a Proof of Claim (No. 34), noted on the claims docket as unsecured, in the amount of $3,728,290.00. MW then proceeded to file an Answer and Coun-

terclaim against the Debtor in the Proceeding on July 1, 1991, amended on July 3, 1991. It also filed an Answer and "Counterclaim" against the Bank in the Proceeding, which it also amended on July 3, 1991. Finally, on July 10, 1991, it filed a Third-party Complaint in this same Proceeding against 16 of its subcontractors on the construction project.

On July 19, 1991, the Bank, apparently still hoping to isolate for decision the issue of the relative priority of its lien and that of MW, filed a motion to dismiss the Amended Counterclaim filed by MW against it; and/or to obtain summary judgment on all Counts of the Amended Counterclaim; or, if the foregoing relief were not granted, to sever Count I of the Amended Counterclaim and try it on an expedited basis ("the Bank's Motion"). Having received a copy of the Bank's Motion and having also observed that MW had made a jury demand as to at least certain issues in this proceeding, but being unclear as to precisely what issues, we ordered, on July 22, 1991, that (1) MW should answer and file any brief in opposition to the Bank's Motion and should indicate on precisely what claims it was making a jury demand, and the basis for any such demand, and whether it believes that this court may conduct a jury trial, on or before August 2, 1991; and (2) that any interested party could respond to the submission of MW on the above issues on or before August 9, 1991.

In response to the July 22, 1991, Order, MW filed, *inter alia*, a Statement indicating that it demanded a jury trial as to all but Count II of the Debtor's Complaint, the first four Counts of its Counterclaim against the Bank, and all Counts of the Bank's Counterclaims against it (*see* pages 110–11 *infra* for a description of each of these Counts). It also stated that it believed that this court could conduct the requested jury trial. Only the Bank filed any pleadings on August 9, 1991, submitting a Reply Brief in support of the Bank's Motion, and argument that MW was not entitled to a jury trial as to any of the claims raised in the Proceeding.

Hoping to effect at least a partial resolution of what was becoming a prolix matter, we scheduled a settlement conference in the Proceeding before the Honorable Judith H. Wizmur of the District of New Jersey on August 16, 1991. Judge Wizmur was successful in establishing that claims of subcontractors were to be resolved by a separate claims procedure. However, she was unable to bring the three primary players—the Debtor, MW, and the Bank—together to a resolution.

On August 20 and August 21, 1991, respectively, MW filed two motions to compel certain discovery in the Proceeding against the Debtor, and also sought a continuance of the trial. A hearing on these motions was scheduled on August 20, 1991. Upon advising counsel for the three primary players of our intentions, we also conducted a colloquy on the status of the Bank's Motion and MW's demand for a jury trial with counsel on August 28, 1991. At the conclusion of that colloquy, we indicated our intention to reserve ruling on any aspect of the Bank's Motion prior to trial. We also indicated our intention to try the entire matter non-jury. While we granted one of the discovery motions, the other becoming moot, we stated that we would hold the parties to the trial date of September 23, 1991, selected by MW and the Debtor on June 26, 1991.

We believed that these expressions of our intentions were necessary to clear the air, with the trial only a month away. We hoped that all of the parties would accept these rulings, since they were consistent with the expressed intentions of the Debtor and MW on June 26, 1991, and were a reasonable dispensation to the Bank's legitimate concern for quick resolution of the lien-priority issue. We believed that these procedural rulings would allow us to consider the lien-priority issue in the context of a full record addressing the disputes relative to the entire construction project of the Debtor's shopping center, yet would not delay the resolution of any issues. We hoped that MW would perceive that this procedure would further its oft-stated goal of obtaining a swift resolution of many of the disputes arising out of the project in issue in a single forum. However, we were advised that MW may take some action to vindicate what it believes are its rights to a jury trial. Therefore, we concluded that this Opinion, explaining the reasons for our decision that MW was not entitled to a jury trial as to any aspect of the Proceeding, was necessary.

Before presenting our reasoning on the jury issue, we shall first summarize the claims set forth in the original Complaint against MW by the Debtor, MW's Amended Counterclaim against the Debtor, MW's Amended "Counterclaim" against the Bank, and the Bank's Counterclaim against MW. These are as follows:

| Pleading | Count No. | Nature of Claim |
|---|---|---|
| Complaint | I* | Determination of Priority of MW's lien |
| | II | Avoidance of a Preference, challenging MW's lien |
| | III* | Breach of contract |
| | IV* | Breach of warranties |
| | V* | Negligence |
| | VI* | Breach of agreement not to file lien |
| | VII* | Liquidation of claim |
| Amended Counterclaim vs. Debtor | I* | Breach of contract (main contract) |
| | II* | Breach of contract (change orders) |
| | III* | Declaratory judgment *re* validity of MW's lien |
| | IV* | Declaratory judgment *re* amounts due on trade claims |
| | V* | Negligent misrepresentation *re* sufficiency of financing |
| | VI* | Fraud *re* sufficiency of financing |

| Pleading | Count No. | Nature of Claim |
|---|---|---|
| | VII* | Unjust enrichment—received benefit of MW services |
| | VIII* | Promissory estoppel *re* misrepresentation of sufficiency of financing |
| Amended "Counterclaim" vs. Bank | I* | Declaratory judgment *re* priority of liens |
| | II* | Negligent misrepresentation *re* sufficiency of financing |
| | III* | Fraud *re* sufficiency of financing |
| | IV* | Equitable subordination |
| | V | Marshalling of secured property |
| Counterclaim of Bank vs. MW | I* | Negligent misrepresentation *re* MW's waiver of its potential mechanic's lien |
| | II* | Wrongful filing of mechanic's lien |

\* = Jury Trial Demanded

---

## C. DISCUSSION

### 1. THE FILING OF ITS PROOF OF CLAIM ELIMINATES MW'S POTENTIAL RIGHTS TO A JURY TRIAL.

The first basis for denial of MW's demand for a jury trial rests upon the simple fact that MW has filed a proof of claim in this bankruptcy case. In *Langenkamp v. Culp*, — U.S. —, 111 S.Ct. 330, 331–32, 112 L.Ed.2d 343 (1990), the Supreme Court, quoting from *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989), thusly succinctly described the impact of the filing of a proof of claim upon a jury demand in a bankruptcy proceeding:

"a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate." [*Granfinanciera, supra,*] 109 S.Ct., at 2798–2799. Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the bankruptcy court. Consequently, they were not entitled to a jury trial on the trustee's preference action.

The Court's conclusion that, by filing a proof of claim and thereby submitting itself within the bankruptcy's court summary jurisdiction, a creditor waives any right to a jury trial, supported the prior reasoning of this court in *In re Light Foundry Associates*, 112 B.R. 134, 137 (Bankr.E.D.Pa.1990). There, *id.,* we held that

a principal established by *Granfinanciera* is that the filing of a proof of claim has a "preclusive effect" on a party's right to a jury trial. [*In re*] *Friedberg,* ... 106 B.R. [50,] at 55 [ (Bankr.S.D.N.Y.1989), *right to appeal granted,* 119 B.R. 433 (S.D.N.Y.1990) ]. *Accord, e.g., In re Paris Industries Corp.,* 106 B.R. 344, 345 (Bankr.D.Me. 1989); [L.] Kaiser, [*"The Jury Is Still Out,"* 1989 NORTON BANKR. L. & ADV. 1, 3 (No. 8, August, 1989) ], at 4–5; and A. Mullen, *The Jury Trial Issue in Bankruptcy Cases*—Granfinanciera, S.A. v. Nordberg, 1 BANKR.L.REV. 5, 7 (Winter, 1990, No. 4).

MW argues that the decision of the district court in *In re New York City Shoes, Inc.,* 122 B.R. 668, 672–73 (E.D.Pa.1990) (cited as *" NYC Shoes "*), supports its right to a jury trial. In *NYC Shoes,* the district court, reversing an Order of this court striking the Defendant's jury demand, held that the debtor's malpractice suit against an accounting firm, whose claim against the debtor was withdrawn about a year prior to the filing of the suit, was not

barred from asserting a right to a jury trial on the basis of *Granfinanciera.* In citing *NYC Shoes,* MW points out that its proof of claim was not filed as of the date of the filing of the Proceeding and that it was compelled to file a claim at this point only because of the establishment of a relatively early claims bar date. *But see In re Hooker Investments, Inc.,* 122 B.R. 659, 663–34 (S.D.N.Y.1991) (creditor not entitled to extension of bar date in order to preserve right to demand jury trial).

We find *NYC Shoes* easily distinguishable from the instant case. The proof of claim in that case was totally eliminated long prior to the institution of the malpractice suit. Here, due to the early prosecution by MW of its motion to attempt to obtain stay relief to arbitrate the parties' differences and its persistent assertion of the priority of its mechanic's lien since the outset of the case, the Debtor was driven to file the Proceeding long prior to the bar date, accurately predicting that it would become a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C) when MW filed a proof of claim.

In light of the instant sequence of facts, it is clear that, when MW filed its proof of claim, it was aware of the existence of the Proceeding and hence it did so with knowledge that this filing could jeopardize its jury-trial demand in the Proceeding. The filing of its proof of claim by MW in such circumstances would appear to clearly constitute a knowing, voluntary, and intelligent waiver of its rights to a jury trial. *See In re Car–Gill, Inc.,* 125 B.R. 133, 137 (Bankr.E.D.Pa.1991).

■ Furthermore, we have some doubts about the correctness of the analysis and decision in *NYC Shoes.* With all due respect, the *NYC Shoes* district court may fail to appreciate that the filing of a proof of claim constitutes a creditor's complete submission to bankruptcy court jurisdiction. Such a filing is not a mere procedural nicety. We would suggest that, having once filed a proof of claim and submitted itself to bankruptcy court jurisdiction, a claimant has irrevocably waived a right to a jury trial as to any issue which might arise in that case. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 920 F.2d 1127, 1131 (3d Cir.1990) (the Court of Appeals does not comment unfavorably on the debtor's argument that the defendant's filing of a proof of claim which was ultimately resolved prior to the institution of the proceeding against it consented to jurisdiction and lost any right to a jury trial).

Therefore, we conclude that, by filing a proof of claim, MW waived any right to a jury trial as to any claims it has against any party in any bankruptcy proceeding in this bankruptcy, ongoing or filed in the future, including the instant Proceeding.

This result is further supported by a line of cases holding that a party which chooses to submit to bankruptcy court jurisdiction waives any right to a jury trial in any proceedings involving that party. *See In re Hallahan,* 936 F.2d 1496, 1505 (7th Cir. 1991) (debtor cannot claim a right to a jury trial because it filed a bankruptcy case, thus submitting itself to bankruptcy jurisdiction); *Bayless v. Crabtree,* 108 B.R. 299, 304–05 (W.D.Okla.1989) (waiver of jury trial arises from a creditor's filing of a compulsory counterclaim in a proceeding against that creditor); *In re Marshland Dev., Inc.,* 129 B.R. 626, 630, 21 B.C.D. 1482, 1484 (Bankr.N.D.Cal.1991) (debtors not entitled to jury trial in removed proceeding in which they were defendants because such a proceeding is "the functional equivalent of a claims objection proceeding"); *In re Lion Country Safari, Inc. California,* 124 B.R. 566, 571–72 (Bankr. C.D.Cal.1991) (debtor waives jury trial by filing a compulsory cross-claim); *In re Malkove & Womack, Inc.,* 122 B.R. 444 (Bankr. N.D.Ala.1990) (debtor has no right to a jury trial of a counterclaim); and *In re Oggi Int'l Foods, Inc., Oggi Int'l Foods, Inc. v. Hibernation,* Bankr.No. 89–11683F, Adv. No. 90–0087F (Bankr.E.D.Pa. May 1, 1990) (debtor's choosing to file a proceeding in bankruptcy court waives its right to a jury trial in action to collect pre-petition accounts receivable).

The instant matter is clearer than such cases as *Bayless, supra;* and *Lion Country, supra,* where the counterclaims filed

by the party which demanded a jury trial were *compulsory* counterclaims. It does not appear that MW's counterclaims against the Debtor are compulsory. The attempt to assert these Counterclaims may be void, in light of the presence of the automatic stay, and the resolution of these matters should probably be relegated to the claims process in the Debtor's bankruptcy case. *See In re Sciortino*, 114 B.R. 423, 426–27 (Bankr.E.D.Pa.1990).

■ However, by no stretch of the imagination was it compulsory for MW to make claims against the Bank in this Proceeding. The Bank, like the subcontractors also brought into this Proceeding by MW, was joined in the Proceeding in the course of MW's apparent attempt to bring together all or most parties and matters at issue relating to the construction of the Debtor's shopping center in this bankruptcy court. Having voluntarily chosen to attempt to expand this court's jurisdiction over matters surrounding the construction project, and, in particular, using this Proceeding as a vehicle to make claims against the Bank, it appears hypocritical for MW to argue that it is entitled to a jury trial as to part of the Proceeding. Since certain portions of the Proceeding appear to be non-core related claims, *see* page 114 *infra;* and *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990), it appears, contrary to MW's position that this court could and should try the entire proceeding in this court, that we may lack jurisdiction to do so as to at least certain claims. Hence, MW's request may balkanize the Proceeding into an action potentially triable before different factfinders in different forums. We thus find that, by choosing the equitably-based bankruptcy forum as the situs to resolve its disputes with the Bank, MW has waived any claim to a jury trial as to its claims against all parties, including the Bank.

2. THE IDENTITY OF THIS PROCEEDING AS AN EQUITABLE, CORE PROCEEDING ALSO ELIMINATES MW'S RIGHTS TO A JURY TRIAL AS TO ANY ASPECT OF IT.

■ We also focus on the nature of the Proceeding, as well as the status of MW as a claimant in the main bankruptcy case in which the Proceeding arises. It is clear to us that the Proceeding is, in substance, a counterclaim to MW's proof of claim and therefore is an equitable, core proceeding pursuant to 28 U.S.C. § 157(c)(2)(C). *See In re Direct Satellite Communications, Inc.*, 91 B.R. 7, 8 (Bankr.E.D.Pa.1988); *In re McCorhill Publishing, Inc.*, 90 B.R. 633, 635 (Bankr.S.D.N.Y.1988); and *In re Pro Machine, Inc.*, 87 B.R. 998, 1003 (Bankr. D.Minn.1988). We do not think that the status of the Proceeding as an action within the scope of § 157(c)(2)(C) is affected by the fact that MW had not yet filed a proof of claim when the Proceeding was filed. As the Debtor accurately predicted, it did ultimately file a timely claim. *Cf. In re Meyertech Corp.*, 831 F.2d 410, 414–18 (3d Cir.1987) (filing of lawsuit against debtor in bankruptcy court is, in effect, a filing of a proceeding regarding allowance or disallowance of claims within the scope of 28 U.S.C. § 157(b)(2)(B)); and *Marshland Dev., supra*, 129 B.R. at 630, 21 B.C.D. at 1484 (proceeding in which the debtor challenged a cause of action of a claimant is the "functional equivalent" of an objection to the claim).

We recognized, in *In re 222 Liberty Associates*, 99 B.R. 639, 645 (Bankr.E.D.Pa. 1989), that the introduction of counterclaims, cross-claims, and third-party claims into an equitable, core proceeding not itself triable by jury can create a difficult problem. In that case, we held that a party-defendant to certain cross-claims waived his right to a jury trial by insisting that the bankruptcy court hear the closely-related primary claim. *Id.* at 646–47. The instant Proceeding presents a far simpler problem. Here, unlike in *222 Liberty*, the party *raising* the Cross–claims and Counterclaims is the *same party* which is demanding a jury trial. As we noted at pages 112–13 *supra*, the very act of filing this non-compulsory Counterclaim in this court, especially in the context of a purely equitable, core proceeding, should effect a waiver of any rights to have these claims decided by a jury.

3. OTHER EQUITABLE CONSIDERA-
TIONS MILITATE AGAINST AL-
LOWING MW TO DEMAND A
JURY TRIAL AS TO ANY OF THE
CLAIMS RAISED IN THE PRO-
CEEDING AT THE TIME WHEN IT
DID SO.

 Other aspects of the procedural history of the Proceeding render the conclusion that MW has waived a jury trial on equitable one. On June 26, 1991, MW, over the Bank's protests, agreed to a trial of this proceeding before this court on September 23, 1991. Several aspects of scheduling, all raised in the context of an implicit assumption that the matter would be tried non-jury, were discussed at that time. It ill-befits MW, after the date has been set and the Bank's request that the clearly-equitable issue of the priority of liens be advanced is rejected in deference to MW's dissent, to sabotage the scheduling process with a subsequent jury demand as to certain aspects of the Proceeding. *See In re Brenner,* 119 B.R. 495, 497 (Bankr.E.D.Pa. 1990); and *Direct Satellite, supra,* 91 B.R. at 9 (failure to raise a jury issue until after a non-jury trial is scheduled may constitute a waiver of a right to a jury trial).

Furthermore, it is apparent from review of the various claims in issue, *see* page 8 *supra,* that many of the claims in issue are equitable in nature and that the relief sought in these Counts is equitable in nature. *See Granfinanciera, supra,* 492 U.S. at 42–55, 109 S.Ct. at 2790–2797; and *Brenner, supra,* 119 B.R. at 496–97. Counts I, II, VI, and VII of the Complaint are core proceedings. Counts I and VI relate to the priority of MW's lien, and hence are core under 28 U.S.C. § 157(b)(2)(K). Furthermore, both of these Counts are closely related to allowance of claims, which is the principal equitable duty performed by bankruptcy courts. Count II is core under § 157(b)(2)(F); no jury demand is made as to this Count. Count VII is core under § 157(b)(2)(B) because it relates to MW's claim against the Debtor.

With respect to MW's Counterclaim against the Debtor, all of the Counts recited therein are aspects of MW's claim, and hence equitable, core matters under § 157(b)(2)(B), if not barred by the automatic stay. *See Meyertech, supra,* 831 F.2d at 414–18. Count III is also, again, core under 28 U.S.C. § 157(b)(2)(K) and is also equitable in nature because it is related to the claims process.

With respect to MW's Counterclaims against the Bank, Counts I, IV, and V are core under § 157(b)(2)(K) (Count I); and §§ 157(b)(2)(O), (b)(2)(A), and (b)(2)(B) (Counts IV and V). Since they relate to the claims process, they are equitable in nature. The same can be said for the Bank's Counterclaims against MW, which both relate to the priority of MW's lien, and hence are also equitable, core matters under § 157(b)(2)(K).

Counts III, IV, and V of the Complaint are non-core, related claims. *See Beard, supra,* 914 F.2d at 443–45; and *In re A.I.A. Industries, Inc.,* 75 B.R. 1013, 1016–1019 (Bankr.E.D.Pa.1987). Counts II and III of MW's Amended Counterclaim against the Bank appear to be not only non-core claims, but also non-related claims. *See In re City Wide Press,* 107 B.R. 68, 70–72 (Bankr.E.D.Pa.1989) (bankruptcy court usually lacks jurisdiction over a dispute between non-debtors). *But cf. In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 262–63, 266–67 (3d Cir.1991) (dispute among non-debtors which involves, *inter alia,* priority of liens may be not only a related proceeding, but also a core proceeding).

The jury demand of MW is therefore made as to claims which are, with only a few exceptions, equitable, core matters in their own rights. We find that the exceptions are clearly subordinate, ancillary issues to a proceeding which is, as a whole, an equitable, core proceeding. *See 222 Liberty Associates, supra,* 99 B.R. at 646–47; and *Direct Satellite, supra,* 91 B.R. at 8–9.

### D. CONCLUSION

We therefore conclude that MW's demands for a jury trial of any aspects of the Proceeding must be stricken.